FAEGRE DRINKER BIDDLE & REATH LLP
Michael Jaeger (Bar No. 289634)
*michael.jaeger@faegredrinker.com*
1800 Century Park East, Suite 1500
Los Angeles, CA  90067
Telephone: 310.500.2161
Facsimile: 310.229.1285

R. Trevor Carter (*pro hac vice*)
*trevor.carter@faegredrinker.com*
Andrew M. McCoy (*pro hac vice*)
*andrew.mccoy@faegredrinker.com*
Reid E. Dodge (*pro hac vice*)
*reid.dodge@faegredrinker.com*
Kendall C. Griffin (*pro hac vice*)
*kendall.griffin@faegredrinker.com*
300 North Meridian Street, Suite 2500
Indianapolis, IN 46024-1750
Telephone: 317.237.0300
Facsimile: 317.237.1100

*Counsel for Defendants, Baby Trend, Inc.
Denny Tsai, and Betty Tsai*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WONDERLAND NURSERYGOODS, CO., LTD., <br><br>     Plaintiff, <br><br> v. <br><br> BABY TREND, INC. et al., <br><br> Defendants. | Case No. 5:14-cv-001153-JWH-SP <br><br> **DISCOVERY MATTER** <br><br> **JOINT STIPULATION RE: DEFENDANTS' MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS** <br><br> **Discovery Cutoff: September 1, 2021** <br> **Pretrial Conference: March 4, 2022** <br> **Trial: April 18, 2022** <br><br> Hearing Date:    August 17, 2021 <br> Hearing Time:    10:00 a.m. <br> Hearing Place:    Zoom <br> Hearing Judge:   Hon. Sheri Pym |

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL
RESPONSES TO DISCOVERY REQUESTS
Case No. 5:14-cv-001153-JWH-SP

1  **TO THE HONORABLE COURT AND ALL PARTIES:**

2  **PLEASE TAKE NOTICE THAT** on August 17, 2021 at 10 a.m., or as soon

3  thereafter as this matter may be heard, in Courtroom 3 of the George E. Brown

4  Federal Building, United States Courthouse, 3470 12th St., Riverside, California, or

5  via Zoom, Defendants Baby Trend, Inc., Denny Tsai, and Betty Tsai (collectively,

6  "Defendants" or "Baby Trend") will and hereby do move the Court for an Order

7  compelling Plaintiff Wonderland Nurserygoods Co, Ltd. ("Plaintiff" or

8  "Wonderland") to provide responses to the following discovery requests, which are

9  further detailed *infra*:

10  - Interrogatory Nos. 3, 9, 11, and 15-17; and

11  - Request for Production Nos. 74-77, and 111-113.

12  Defendants' motion is based on this Notice of Motion, Defendants' portion of

13  the accompanying Joint Stipulation, the accompanying Declaration of Kendall C.

14  Griffin and its exhibits,[1] all pleadings and papers on file in this action, and such other

15  argument and evidence as may be presented to the Court prior to or at the hearing

16  on this matter. This motion is made following the conference of counsel pursuant to

17  Civil L.R. 37-1, which took place on May 28, 2021.

18

19

20

21

22

23

24

25

26  
27  [1] Exhibit 1 to the Declaration of Kendall C. Griffin ("Griffin Decl.") is a compilation of the Scheduling and Case Management Orders entered in this case
28  to date. (Griffin Decl., ¶ 4 (Ex. 1).)

i

1  Dated:  July 27, 2021 **FAEGRE DRINKER BIDDLE & REATH LLP**

2

3  By: */s/ Kendall C. Griffin*
4  Michael Jaeger (Bar No. 289634)
   **FAEGRE DRINKER BIDDLE & REATH LLP**
5  11766 Wilshire Blvd., Suite 750
   Los Angeles, CA  90025
6  Ph: 310.500.2090
   Fax: 310.500.2091
7  Email: Michael.Jaeger@faegredrinker.com

8
9  R. Trevor Carter (*pro hac vice*)
   Andrew M. McCoy (*pro hac vice*)
10 Reid E. Dodge (*pro hac vice*)
   Kendall C. Griffin (*pro hac vice*)
11 **FAEGRE DRINKER BIDDLE & REATH LLP**
12 300 North Meridian St., Suite 2500
   Indianapolis, IN  46204
13 Ph:      (317) 237-0300
   Fax:     (317) 237-1000
14 Email: trevor.carter@faegredrinker.com
15        andrew.mccoy@faegredrinker.com
16        reid.dodge@faegredrinker.com
        kendall.griffin@faegredrinker.com
17
18 *Counsel for Defendants, Baby Trend, Inc.,*
   *Denny Tsai, and Betty Tsai*
19

20

21

22

23

24

25

26

27

28

ii

1

**TABLE OF CONTENTS**

2
                                                                                    Page

3

4   I.    INTRODUCTION ................................................................................ 1

5         A.    Defendants' Introductory Statement .................................................. 1

6         B.    Plaintiff's Introductory Statement ..................................................... 4

7
8   II.   LEGAL STANDARD ........................................................................ 7

9         A.    Defendants' Legal Authority ............................................................ 7

10        B.    Plaintiff's Legal Authority ............................................................... 8

11  III.  DEFENDANTS' INTERROGATORY NOS. 3, 15, AND 16 ................... 10

12        A.    Defendants' Requests and Plaintiff's Response ............................... 10

13        B.    Defendants' Position ...................................................................... 19

14
15              1.   Plaintiff's Improper Refusal to Identify its Own Exposed and
                     Non-Exposed Tube Products in its Financial Spreadsheets .............. 19

16              2.   The Court Should Compel Plaintiff to Supplement Interrogatory
17                   Responses to "Unlock" Plaintiff's Financial Spreadsheets ............... 22

18        C.    Plaintiff's Position .......................................................................... 24

19              1.   Defendants' motion to compel interrogatory responses correlating
                     sales data with the '919 patent should be denied ............................. 24

20
21              2.   Defendants' motion to compel interrogatory responses correlating
                     sales data with the '949 patent should be denied ............................. 28

22  V.    DEFENDANTS' INTERROGATORY NO. 17 AND
23        REQUESTS FOR PRODUCTION NOS. 74-77 AND 111-113 ............... 29

24        A.    Defendants' Requests and Plaintiff's Response ............................... 29

25        B.    Defendants' Position ...................................................................... 35

26              1.   Plaintiff's Improper Refusal to Produce Cost Data for Its Own
27                   Exposed and Non-Exposed Tube Products in its Financial
                     Spreadsheets .................................................................................. 35
28

iii

2.   The Court Should Compel Plaintiff to Produce Cost Data and Supplement Interrogatory Responses to "Unlock" Plaintiff's Financial Spreadsheets ........................................................................... 37

C.   Plaintiff's Position ................................................................... 39

1.   Wonderland Does Not Seek Damages Under a Lost Profits Theory. ..................................................................................... 39

2.   Baby Trend's Cost Data, not Wonderland's Cost Data, Is Relevant to Damages under a Reasonable Royalty Theory. .............................. 39

3.   To the Extent Wonderland's Profits Are Relevant to the Determination of a Reasonable Royalty, Wonderland Has Produced Non-Burdensome Cost Data ..................................................... 43

VI.   DEFENDANTS' INTERROGATORY NO. 15 ......................................... 45

A.   Defendants' Interrogatory and Plaintiff's Response ......................... 45

B.   Defendants' Position ................................................................ 46

1.   Plaintiff's Improper Refusal to Identify any '949 Patent-Practicing Products ............................................................................... 46

2.   The Court Should Compel Plaintiff to Supplement Its Response to Interrogatory No. 15 ............................................................... 47

C.   Plaintiff's Position .................................................................. 49

VII.   DEFENDANTS' INTERROGATORY NO. 9 ......................................... 51

A.   Defendants' Request and Plaintiff's Response ................................ 51

B.   Defendants' Position ................................................................ 52

1.   Plaintiff's Improper Refusal to Provide the Factual Basis for Its Permanent Injunction Remedy ................................................... 52

2.   The Court Should Compel Plaintiff to Supplement Its Response to Interrogatory No. 9 ................................................................. 53

C.   Plaintiff's Position .................................................................. 55

VIII.   DEFENDANTS' INTERROGATORY NO. 11 ......................................... 57

A.   Defendants' Request and Plaintiff's Response ................................ 57

B.   Defendants' Position .......................................................... 57

iv

1.   Plaintiff's Improper Refusal to Describe Why Defendants Are Not Entitled to Intervening Rights ................................................................. 57

2.   The Court Should Compel Plaintiff to Supplement Its Response to Interrogatory No. 11 ....................................................................... 58

C.   Plaintiff's Position .............................................................................. 60

1.   Absolute v. Equitable Intervening Rights ..................................... 60

2.   Facts Relevant to Equitable Intervening Rights ........................... 62

3.   Defendants Recently Disclosed Facts Highly Relevant to Wonderland's Claim for Willful Infringement. ................................... 62

4.   Defendants' Improper Refusal to Provide Discovery Relevant to Its Equitable Intervening Rights Defense ........................................... 63

IX.   CONCLUSION ............................................................................................ 65

A.   Defendants' Position .......................................................................... 65

B.   Plaintiff's Position .............................................................................. 66

# I.     INTRODUCTION

## A.     Defendants' Introductory Statement

Defendants move for an Order compelling Plaintiff to: (1) identify which of Plaintiff's playards listed in WOND_0080866 and WOND_0080865 ("Plaintiff's Financial Spreadsheets") are non-exposed tube playards and which are exposed tube playards, including identifying which of the exposed tube playards allegedly practice at least one claim of U.S. Patent No. RE43,919 (the "'919 Patent") or U.S. Patent No. 6,954,949 (the "'949 Patent"); (2) produce cost data associated with the playard products listed in Plaintiff's Financial Spreadsheets, including costs per unit and any other miscellaneous costs that would be captured in annual reports, financial statements, and/or accounting audits since 2000; (3) supplement Plaintiff's response to Interrogatory No. 15 and produce any technical information regarding Plaintiff's '919 and '949 Patent-practicing products; (4) supplement Plaintiff's response to Interrogatory No. 9 to provide a full and complete explanation of Plaintiff's basis for seeking a permanent injunction remedy; and (5) supplement Plaintiff's response to Interrogatory No. 11 to provide a full and complete explanation of why Plaintiff believes Defendants are not entitled to equitable intervening rights.

First, the identity of Plaintiff's two types of playard products (one having an "exposed tube" appearance and the other having a "non-exposed tube" appearance) is highly relevant to multiple issues in this case, including damages and secondary considerations (also referred to as objective indicia of nonobviousness). Specifically, and as explained in more detail below, such information is relevant to damages in the form of lost profits and/or a reasonable royalty—the two primary types of damages Plaintiff seeks in this case. While Plaintiff does not seem to dispute the relevancy of this information, Plaintiff's Financial Spreadsheets completely lack relevant identifying information, besides model number. In their current form, Plaintiff's Financial Spreadsheets are useless to Defendants. During the meet and confer on May

1

28, 2021, Plaintiff's counsel stated that a production was forthcoming that would help identify the products listed in Plaintiff's Financial Spreadsheets. On June 1, 2021 Plaintiff produced over 33,300 documents but has yet to explain how this production of product images and related emails clarifies Plaintiff's Financial Spreadsheets. Defendants' counsel followed up on June 1, 2021 and June 11, 2021, requesting an explanation for this production and a date when Plaintiff would supplement its deficient discovery responses. Plaintiff's counsel finally responded in a letter on July 8, 2021, identifying the 33,300 documents as the "key" needed to understand the spreadsheet. Plaintiff, not Defendants, is in the best position to identify which playards have exposed tubes and which do not. Simply pointing to 33,300 emails that include attached images as a "key" to unlock a spreadsheet is far from the most efficient or practical way to sufficiently identify Plaintiff's products in response to Defendants' discovery requests. Thus, the continued lack of identifying information in Plaintiff's Financial Spreadsheets and Plaintiff's steadfast refusal to comply with its discovery obligations has resulted in the present motion.

Second, cost data is basic information that is relevant to damages issues in any patent case. Plaintiff has been very particular about the form of Defendants' financial information, including, for example, with respect to cost data; however, Plaintiff has refused to provide reciprocal data to Defendants. In its July 8, 2021 letter, Plaintiff's counsel pointed to four separate documents from Plaintiff's production that contain some information regarding costs. This cost data only covers certain of Plaintiff's '919 Patent practicing products sold between 2011-2013. These documents only partially begin to be responsive to Defendants' requests. Thus, Plaintiff's refusal to produce updated cost data in response to Defendants' discovery requests for this information is improper and therefore deficient.

Third, technical and financial information regarding which of Plaintiff's playard products practice the '919 Patent and which practice the '949 Patent is highly

relevant to obviousness and damages. As explained in more detail below, such evidence is relevant to secondary considerations of nonobviousness, including, for example, the commercial success of the invention, and factors into the damages analysis as it relates to any alleged lost profits and reasonable royalty calculations. Plaintiff's counsel's insistence in the July 8, 2021 letter that Defendants withdrew this request during the May 28, 2021 meet and confer is exactly backwards. In reality, the parties discussed the importance of and necessity for information regarding which of Plaintiff's playards practice the '949 Patent. Thus, Plaintiff's outright refusal to respond to Defendants' discovery requests for this information is improper.

Fourth, Plaintiff must provide a complete and proper explanation of the factual and legal bases for its request for a permanent injunction, and specifically address fully and completely the four factors the Court considers for granting or denying injunctive relief under *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388 (2006). Indeed, as detailed below, Plaintiff's brief and conclusory response to Interrogatory No. 9 does not provide sufficient notice to Defendants regarding what evidence Plaintiff intends to rely on for its permanent injunction argument. Thus, Plaintiff's refusal/delay in supplementing its response is improper.

Fifth, Plaintiff must provide a complete and proper explanation of the factual and legal bases for its assertion that Defendants are not entitled to equitable intervening rights—which is relevant to a significant defense. Plaintiff's conclusory statement that Baby Trend is a willful infringer is insufficient at least because it does not explain how Baby Trend was a willful infringer and how that would impact the equitable intervening rights analysis. Defendants have produced all the information it currently has that is relevant to their intervening rights arguments. Thus, Plaintiff's refusal/delay in supplementing its response is improper.

For these reasons, and as explained in more detail below, the Court should grant Defendants' motion to compel.

## B.   Plaintiff's Introductory Statement

The asserted patent in this case—U.S. Patent No. RE43,919 ("the '919 patent")—is directed to a baby crib with upright support tubes that are "exposed" on the outside of the enclosed space.[2]

The relevant time period in this case spans nearly two decades.  The '919 patent was filed on October 26, 2006 and issued on January 15, 2013.  The '919 patent is a reissue of U.S. Patent No. 6,859,957 ("the '957 patent"), which was filed on April 20, 2004 and issued on March 1, 2005.  The '919 patent also claims priority to a Chinese patent application filed on January 2, 2004.  The '919 patent is set to expire on April 20, 2024.

Wonderland is a manufacturer of playards.  Wonderland's customers, including Graco Children's Products Inc. ("Graco") and Nuna Baby Essentials, Inc. ("Nuna"), sell playards manufactured by Wonderland under their own brands. Wonderland first sold an exposed tube playard to Graco in 2004 and to Nuna in 2012.

Defendant Baby Trend, Inc. ("Baby Trend") is a direct competitor of Graco and Nuna in the U.S. playard market.  The accused products in this case are "exposed tube" playards sold by Baby Trend since January 15, 2013—when the '919 patent issued.  But Baby Trend sold accused products before 2013.  In fact, on information and belief, Baby Trend has sold playards that practice the asserted claims of the '919 patent since 2007.

Wonderland filed the Complaint in this action on June 6, 2014.  However, this case was stayed pending *inter partes* review from April 2015 until September 2019. Thus, while this case has been pending for over seven years, discovery is still ongoing.  For example, the parties have not yet taken any fact depositions and several discovery disputes are still pending resolution.

---

[2] *See* Declaration of Michael J. Song ("Song Decl."), Ex. A at Claims 1, 8, 15, and 20 (claiming a baby crib wherein "the outwardly facing surface of each of the upright tubes is exposed on an outside of the enclosed space").

4

1    When the parties met and conferred regarding the instant disputes on May 28,

2  2021, discovery was completely one-sided.  At the time, Baby Trend had produced

3  363 documents spanning 3,978 pages, but 218 of those 363 documents related to

4  prior art and prosecution histories related to the '919 patent.  In contrast, at the time,

5  Wonderland had produced 13,578 documents spanning 80,866 pages, including

6  conception and reduction to practice documents, emails, settlement agreements,

7  financials, deposition transcripts and expert reports from related cases.

8    Glaringly missing from Baby Trend's production was any documents related

9  to the design and development of the accused products, including documents or

10  samples showing the internal structure of the fabric connection used in the accused

11  products.  Wonderland expended significant efforts to obtain such design documents,

12  including multiple meet-and-confers and serving its portion of a joint stipulation for

13  a motion to compel.  But because Baby Trend represented that it did not have any

14  relevant design documents after conducting a reasonable search, Wonderland did not

15  file the motion to compel.

16    On June 1, 2021, Defendants disclosed for the first time that there were some

17  accused products sold during the relevant damages period that used a different type

18  of connection mechanism to attach the fabric member to the upright tube than what

19  was previously accused in the case.  On June 2, 2021, Defendants provided a sample

20  of a product containing this "newly discovered" fabric connection, which was a

21  blatant copy of the invention claimed in the '919 patent.

22    On June 28, 2021, Defendants completed its investigation and confirmed that

23  6-8 accused products contained the copycat fabric connection.  But while Defendants

24  produced some documents relevant to the extent of their copying, Defendants

25  continue to withhold highly relevant documents and information.  For example,

26  Defendants claim that documents showing when a purported design change was

27  made in 2012 are privileged.  Defendants also refuse to produce complete financial

28

information for products sold prior to 2013 and claim that it no longer has any sales data prior to 2011.  Defendants only provide a cursory explanation of its intervening rights defense.  Defendants apparently are withholding market share information based on confidentiality objections.

In July 2021, Defendants changed their strategy and produced over 100,000 emails and attachments spanning over 1 million pages.  Wonderland is currently in the process of reviewing Defendants' email productions to find design documents, financial data, and market share information that it has sought from Defendants from the beginning of this case.

Defendants' discovery tactics are relevant to the instant motion to compel because the documents that Defendants refuse to produce, or have buried in their email production, contain the information Wonderland needs to supplement its interrogatory responses related to Wonderland's claim for a permanent injunction and Defendants' intervening rights defense.  In addition, Defendants' motion to compel asks that Wonderland be forced to produce cost data for exposed tube playards and non-exposed tube playards over the past two decades, while Defendants limit its production of the same information to post-2013 data.  Wonderland cannot instantaneously review 1 million pages of emails to determine whether Baby Trend made "substantial preparations" to sell accused products or whether it has made profits to recoup its investment into the design of the accused products, especially when Defendants refuse to provide such highly relevant information based on privilege.  In fact, Defendants have failed to meet their burden to show the relevance of Wonderland's cost data or whether Wonderland products practice a patent not asserted in this case, especially considering the burden such discovery requests would impose on Wonderland.

For these reasons, Defendants' motion to compel should be denied in its entirety.

6

## II.   LEGAL STANDARD

### A.   Defendants' Legal Authority

Defendants are entitled to discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). A responding party has a duty to make a reasonable inquiry and effort to locate documents requested and to describe their efforts to locate responsive documents. *Alfredo v. Ditech Fin. LLC,* No. CV1704294GWJEMX, 2018 WL 5928133, at *1 (C.D. Cal. Oct. 5, 2018); *A. Farber & Partners, Inc. v. Garber,* 234 F.R.D. 186, 190 (C.D. Cal. 2006)*.*

Rule 37 provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3). "Upon a motion to compel discovery, the movant has the initial burden of demonstrating relevance." *United States v. McGraw-Hill Companies, Inc.*, No. CV 13-779-DOC JCGX, 2014 WL 1647385, at *8 (C.D. Cal. Apr. 15, 2014) (internal citation omitted). "In turn, the party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." *Id*. (internal citation omitted); *accord Duran v. Cisco Sys., Inc*., 258 F.R.D. 375, 378 (C.D. Cal. 2009) ("The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." (citing *Blankenship v. Hearst Corp*., 519 F.2d 418, 429 (9th Cir. 1975); *Sullivan v. Prudential Ins. Co. of Am*., 233 F.R.D. 573, 575 (C.D. Cal. 2005)).

## B.    Plaintiff's Legal Authority

Parties are entitled to discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

A responding party has a duty to make a reasonable inquiry to locate documents requested.  Fed. R. Civ. P. 34(b)(2)(B); *Dunn v. Trans World Airlines, Inc.*, 589 F.2d 408 (9th Cir. 1978); *Alexander v. F.B.I.*, 194 F.R.D. 305, 310 (D.D.C. 2000).  "A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i).  "A party responding to a Rule 34 document request cannot be compelled to prepare or create new documents." *Van v. Wal-Mart Stores, Inc.*, 2011 WL 62499, at *1 n. 1 (N.D. Cal. 2011) (citing *Alexander*, 194 F.R.D. at 310).

Rule 37 provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3).  "Upon a motion to compel discovery, the movant has the initial burden of demonstrating relevance." *United States v. McGraw-Hill Cos., Inc.*, No. CV 13-779-DOC JCGX, 2014 WL 1647385, at *8 (C.D. Cal. Apr. 15, 2014) (internal citation omitted).  "In turn, the party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." *Id.* (internal citation omitted).

A party who has responded to an interrogatory, request for production, or request for admission must supplement or correct its disclosure or response "in a

timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).

## III.   DEFENDANTS' INTERROGATORY NOS. 3, 15, AND 16

### A.   Defendants' Requests and Plaintiff's Response

On January 8, 2020, Defendants served their First Set of Interrogatories ("Defendants' First Set of ROGs"), which included Interrogatory No. 3.[3] On February 21, 2020, Plaintiff served its objections and responses to Defendants' First Set of ROGs.[4] On April 6, 2021 Defendants served their Third Set of Interrogatories ("Defendants' Third Set of ROGs"), which included Interrogatory Nos. 15-16.[5] On May 6, 2021 Plaintiff served its objections and responses to Defendants' Third Set of ROGs.[6] Pursuant to L.R. 37-2, the pertinent definitions, requests, and responses are reproduced below:

**DEFINITIONS:**

The term "Non-Exposed-Tube Playard" means and Relates to any playard product that Wonderland has ever manufactured, sold, offered for sale, or imported into the United States that has fabric, mesh or other enclosure member covering or obscuring the outside of the vertical corner tubes of the playard.

**INTERROGATORY NO. 3:** Identify and describe in complete detail All use(s), sale(s), offer(s) for sale, knowledge, description(s), invention(s), event(s), occurrence(s), circumstance(s), and Any other activities concerning the subject matter of the '919 Patent or Any product or service embodying or practicing Any claim of the '919 Patent, which took place or occurred prior to or after the filing date of the U.S. patent application that issued as the '919 Patent, whether or not Any such activities took place within the United States, including, but not limited to, the dates of Any such activities, the type of Any such activities (e.g., use(s), sale(s), offer(s) for sale, knowledge, description(s), invention(s), etc.), Any product(s) and/or

---

[3] Griffin Decl., ¶ 5 (Ex. 2).
[4] Griffin Decl., ¶ 6 (Ex. 3).
[5] Griffin Decl., ¶ 7 (Ex. 4).
[6] Griffin Decl., ¶ 8 (Ex. 5).

service(s) involved in Any such activities, and the names of All Persons involved in Any such activities; and produce All Documents, Things, and ESI concerning the subject matter of this interrogatory and/or Your response hereto.

**RESPONSE TO INTERROGATORY NO. 3:** Wonderland objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable doctrine of privilege or immunity.

Wonderland further objects to this interrogatory as overly broad, unduly burdensome, not seeking relevant information, and not reasonably calculated to lead to the discovery of admissible evidence.

Wonderland also objects to this interrogatory as improperly compound, as it includes many discrete subparts, including discrete categories of information.

Wonderland objects on the basis that the interrogatory is premature and will be addressed by Wonderland's expert(s).

Wonderland further objects to this interrogatory to the extent it purports to require production of documents.

Subject to its general and specific objections, Wonderland states that: One or more of the asserted claims of the '919 patent are practiced by:

| Company | Graco | |
|---|---|---|
| **Series** | **Wave Series** | |
| **Product Name** | **Pack 'n Play® Playard** | **Silhouette™ Pack 'n Play Playard** |
| | 9950KASCA | 9B01NOU |
| | 9951DRB | 9B03CBM |
| | 9951DRB EL | 9B03CBM EL |
| | 9951SML EL | 9B07MLB EL |
| **Product Model** | 9952CLO | 9B08DEN |
| | 9952TFE | 9B08GNA |
| | 9955SML | 9B08TNS1 |
| | 9957RIT | 9B08TNS1 EL |
| | 9957RIT EL | 9B08UTP |

11

| | | | |
|---|---|---|---|
| | | 9965GGG | 9B09GRAI |
| | | 9965GGG EL | 9B10CAD1 |
| | | 9965MIN | 9B10CAD1 EL |
| | | 9965MIN EL | 9B10CTM |
| | | 9968SNDI | 9B10CTM EL |
| | | 9951KASCA | 9B00CBM |
| | | 9951SMLCA | 9B00CBM EL |
| | | 9952FMT | 9B05KAS |
| | | 9952GLR | 9B08CSLCA |
| | | 9952KDL | 9B08CSL |
| | | 9952KDL EL | 9B08GLR |
| | | 9952ORC | 9B08SPE |
| | | 9955MNS | 9B08TNSCA |
| | | 9955MNS | EL 9B08TNS |
| | | 9957CAP | 9B08TNS EL |
| | | 9957DEN | 9B10CADCA |
| | | 9957CNP | 9B10CAD |
| | | 9957CNP EL | 9B10CAD EL |
| | | 9957WSR | 9B12NAR |
| | | 9957WSR EL | 9B13EHM |
| | | 9958CNR | 9B13NAR |
| | | 9952TFE | 9B08CAT |
| | | 9952LEG | 9B08CAT EL |
| | | 9965BIAI | 9B08DAI |
| | | 9950BIA | 9B08GNA |
| | | 9950SLTCA | 9B08UTP |
| | | 9950DNB | 9B09GNAI |
| | | 9955BNT | 9B10CTM |
| | | 9955BNT EL | 9B10CTM EL |
| | | 9955RNS | 9B08EGM |
| | | 9966AUB | 9B08WCO |
| | | 9958CNR | 9B12CLR |
| | | | 9B08FIN |
| | | | 9B12LGB |
| | | | 9B07MLBCA |
| | | | 9B08CRF |
| | | | 9B08FRW |

12

| Company | Graco | |
|---|---|---|
| Series | Twin Wave Series | |
| Product Name | Pack 'n Play® Playard with Twins Bassinet | |
| Product Model | 9999SOU | |
| | 9999SOU EL | |
| | 9F00KSG | |
| | 9F00VNC | |

| Company | Graco | |
|---|---|---|
| Series | Wavell Series | |
| Product Name | Suite Solutions | |
| Product Model | 9A00BKR | |
| | 9A00BKR EL | |
| | 9A00BKR | |
| | 9A00RIT | |
| | 9A00RIT EL | |

| Company | Graco | |
|---|---|---|
| Series | MiniWave Series | |
| Product Name | Travel Lite™ Crib | Bedroom Bassinet |
| Product Model | 9097HRL | 9K01CTM |
| | 9097LRD | 9K01GRC1 |
| | 9097RIT | 9K01GRC1 EL |
| | 9097RIT EL | 9K01MTL |
| | 9097CNP | 9K01SIE |
| | 9097CNP EL | 9K01GRCCA |
| | 9097CNP EL | 9K01GRC |
| | 9097RIT EL | 9K01GRC EL |
| | | 9K01LIL |
| | | 9K01SIE |
| | | 9K01MTLCA |
| | | 9K01MTL EL |

| Company | Aprica |
|---|---|

13

| Series | Haven | |
|---|---|---|
| Product Name | Haven | |
| Product Model | 9U00TLT | |
| | 9U00TLTCA | |

| Company | Nuna | |
|---|---|---|
| Series | Sena | Sena Mini |
| Product Name | Sena | Sena Mini |
| Product Model | TC-01-001E | TC-02-001E |
| | TC-01-001E | TC-02-001E |
| | TC-01-001E(AP) | TC-02-001E(AP) |
| | TC-01-001E(AP) | TC-02-001E(AP) |
| | TC-01-001E(BYI) | TC-02-001E(BL) |
| | TC-01-001E(BYI) | TC-02-001E(BL) |
| | TC-01-001E(CM) | TC-02-001E(BYI) |
| | TC-01-001E(CM) | TC-02-001E(BYI) |
| | TC-01-001E(CVT) | TC-02-001E(CM) |
| | TC-01-001E(CVT) | TC-02-001E(CM) |
| | TC-01-001E(DA) | TC-02-001E(LIL) |
| | TC-01-001E(DA) | TC-02-001E(LIL) |
| | TC-01-001E(DTK) | TC-02-001E(OL) |
| | TC-01-001E(DTK) | TC-02-001E(OL) |
| | TC-01-001E(EPT) | TC-02-001E(TB) |
| | TC-01-001E(EPT) | TC-02-001E(TB) |
| | TC-01-001E(KTJ) | TC-02-001GL |
| | TC-01-001E(KTJ) | TC-02-001GL |
| | TC-01-001E(LIL) | TC-02-001U |
| | TC-01-001E(LIL) | TC-02-001U |
| | TC-01-001E(LT) | TC-02-001U(JWL) |
| | TC-01-001E(LT) | TC-02-001U(JWL) |
| | TC-01-001E(OL) | TC-02-002E |
| | TC-01-001E(OL) | TC-02-002E |
| | TC-01-001E(TB) | TC-02-002E(CM) |
| | TC-01-001E(TB) | TC-02-002E(CM) |
| | TC-01-001GL | TC-02-002E(GL) |
| | TC-01-001GL | TC-02-002E(GL) |

14

| | |
|---|---|
| TC-01-001U | TC-02-002E(LIL) |
| TC-01-001U | TC-02-002E(LIL) |
| TC-01-001U(JWL) | TC-02-002GL |
| TC-01-001U(JWL) | TC-02-002GL |
| TC-01-001UK | TC-02-003E |
| TC-01-001UK | TC-02-003E |
| TC-01-002E | TC-02-003GL |
| TC-01-002E | TC-02-003GL |
| TC-01-002E(4KD) | TC-02-004GL |
| TC-01-002E(4KD) | TC-02-004GL |
| TC-01-002E(AP) | TC-02-005GL |
| TC-01-002E(AP) | TC-02-005GL |
| TC-01-002E(BL) | TC-06-001GI |
| TC-01-002E(BL) | TC-06-001GI |
| TC-01-002E(CM) | TC-06-004 |
| TC-01-002E(CM) | TC-06-004 |
| TC-01-002E(CVT) | TC-06-005 |
| TC-01-002E(CVT) | TC-06-005 |
| TC-01-002E(EPT) | |
| TC-01-002E(EPT) | |
| TC-01-002E(LIL) | |
| TC-01-002E(LIL) | |
| TC-01-002E(LT) | |
| TC-01-002E(LT) | |
| TC-01-002GL | |
| TC-01-002GL | |
| TC-01-003E | |
| TC-01-003E | |
| TC-01-003E(BYI) | |
| TC-01-003E(BYI) | |
| TC-01-003E(CVT) | |
| TC-01-003E(CVT) | |
| TC-01-003E(DTK) | |
| TC-01-003E(DTK) | |
| TC-01-003E(EPT) | |
| TC-01-003E(EPT) | |
| TC-01-003E(LIL) | |
| TC-01-003E(LIL) | |
| TC-01-003GL | |

15

| | | |
|---|---|---|
| | TC-01-003GL | |
| | TC-01-004GL | |
| | TC-01-004GL | |
| | TC-01-005GL | |
| | TC-01-005GL | |
| | TC-03-001E(DA) | |
| | TC-03-001E(DA) | |
| | TC-04-001E(BYC) | |
| | TC-04-001E(BYC) | |
| | TC-04-001E(NUN) | |
| | TC-04-001E(NUN) | |
| | TC-04-001U(NUN) | |
| | TC-04-001U(NUN) | |
| | TC-04-003E(BYC) | |
| | TC-04-003E(BYC) | |
| | TC-04-003E(NUN) | |
| | TC-04-003E(NUN) | |
| | TC-05-001GI | |
| | TC-05-001GI | |
| | TC-05-004 | |
| | TC-05-004 | |
| | TC-05-005 | |
| | TC-05-005 | |

Further, subject to its general and specific objections, Wonderland states that the following table identifies the persons responsible for various categories of activities.

| Company | Graco | |
|---|---|---|
| Series | Wave Series / Twin Wave / Wave II | |
| Product Name | Pack ′n Play® Playard | Silhouette™ Pack ′n Play® Playard |
| Activity | People | |
| Design | Shun Min (aka Arden) CHEN<br>Yen Feng LIAO | |
| Development | Xiao Yan LI<br>Yen Feng LIAO | |
| Engineering | Renee WANG | |

16

| | Susan WU (also known as Wen Shan WU) | | |
|---|---|---|---|
| **Marketing Sale or Offer for Sale** | Julia KO (also known as Wen Hua KO) | | |

| Company | Aprica | Nuna | |
|---|---|---|---|
| **Product Name** | **Haven** | **Sena** | **Sena Mini** |
| **Activity** | **People** | | |
| **Design** | Kenny CHENG<br>Shun Min (aka Arden) CHEN | | |
| **Development** | Lanly PU (also known as Nan Gui BU) | | |
| **Engineering** | Renee WANG<br>Alan HWANG (also known as Chih Ming HUANG) | | |
| **Marketing Sale or Offer for Sale** | Julia KO (also known as Wen Hua KO)<br>Erato SHEN (also known as Jia Yeh SHEN) | | |

Because discovery is in its early stages and not complete, Wonderland, as stated in its Reservation of Rights, expressly reserves the right to supplement its response to this interrogatory.

**FIRST SUPPL. RESPONSE TO INTERROGATORY NO. 3:** Wonderland is not aware of any sales or public disclosures of products practicing the '919 patent before April 20, 2004, the filing date of Application No. 10/829,027, the initial US application from which the '919 patent eventually reissued.

**INTERROGATORY NO. 15:** Identify by name, model number, and Any other identifying indicia Any Wonderland playard products that You contend practice Any claim of the '949 Patent.

**RESPONSE TO INTERROGATORY NO. 15:** In addition to its general objections, Wonderland further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable doctrine of privilege or immunity. Wonderland

further objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to Defendants' needs in this case. Wonderland further objects to this Interrogatory as overbroad, unduly burdensome, and lacking relevance because Wonderland is not "contending" that any "playard products … practice Any claim of the '949 Patent." Wonderland further objects to this Interrogatory as vague and ambiguous as to the phase "Any other identifying indicia." Wonderland further objects to this Interrogatory as vague, ambiguous, overbroad, and unduly burdensome because it is unlimited as to time or geographic location. Wonderland further objects to this Interrogatory to the extent that it seeks information protected by responding party's or third parties' right to privacy and/or seeks confidential, proprietary, trade secret, or other sensitive business and/or financial data or information.

Subject to its general and specific objections, because the '949 Patent is not asserted in this matter, Wonderland does not contend that any Wonderland playard products practice any claim of the '949 Patent.

**INTERROGATORY NO. 16:** Identify by name, model number, and Any other identifying indicia Any Non-Exposed-Tube Playards sold, offered for sale, or imported into the United States after January 1, 2000.

**RESPONSE TO INTERROGATORY NO. 16:** In addition to its general objections, Wonderland further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable doctrine of privilege or immunity. Wonderland further objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to Defendants' needs in this case. Wonderland further objects to this Interrogatory as vague and ambiguous as to the phase "Any other identifying indicia." Wonderland further objects to this Interrogatory to the extent that it seeks information protected by responding party's or third parties' right to privacy and/or

18

seeks confidential, proprietary, trade secret, or other sensitive business and/or financial data or information.

Subject to its general and specific objections, Wonderland refers to its response to RFP No. 111 and, if such documents are located consistent with that response, Wonderland will identify documents responsive to this Interrogatory pursuant to Federal Rule of Civil Procedure 33(d).

### B. Defendants' Position

#### 1. *Plaintiff's Improper Refusal to Identify its Own Exposed and Non-Exposed Tube Products in its Financial Spreadsheets*

These discovery requests seek basic product and financial information necessary in any patent case. Plaintiff's Financial Spreadsheets[7], as they currently stand, are incomprehensible from Defendants perspective because the only identifying information for the products listed therein are internal model numbers, category names, and platform names, all of which fail to indicate to Defendants which products practice claims of the '919 Patent, which products practice claims of the '949 Patent, and which do not.[8] This information is only partially responsive to the identified discovery requests. While Plaintiff has provided model numbers for allegedly '919 Patent practicing products in its response to Interrogatory No. 3, Plaintiff has not supplemented this response with any additional model numbers since February 2020. Additionally, Plaintiff has yet to respond to Interrogatory Nos. 15 and 16, which would identify any '949 Patent practicing products and any non-exposed tube products by model number. In particular, Plaintiff's refusal to respond substantively to Interrogatory No. 15 "because the '949 Patent is not asserted in this matter" and therefore "Wonderland does not contend that any Wonderland playard products practice any claim of the '949 Patent" is an attempt to improperly dodge the

---

[7] See Griffin Decl., ¶¶ 15-17 (Exs. 14 and 15).
[8] Griffin Decl., ¶ 15.

underlying question. To the extent Plaintiff has not previously and does not currently manufacture playards that practice one claim of the '949 Patent, Plaintiff should explicitly state that fact. Otherwise, Plaintiff should be required to supplement its response to Interrogatory No. 15 to fully respond because Plaintiff is in the best position to identify its own products and make clear which products it alleges practice its own patents and which do not.

Plaintiff's June 1, 2021 production of over 33,300 documents[9] did little to assist Defendants in deciphering Plaintiff's Financial Spreadsheets. Without some sort of guide for "decoding" Plaintiff's Financial Spreadsheets, the information contained therein is essentially useless. For reasons unknown, Plaintiff has consistently delayed its production of relevant financial data.

Defendants raised these issues related to Plaintiff's deficient production of financial information, among other discovery deficiencies, on numerous occasions. During a meet and confer on April 12, 2021, the parties discussed various outstanding discovery disputes, including the complete lack of production (at that point in time) of updated financial data for Plaintiff.[10] Plaintiff's counsel assured Defendants that a production of financial data would be made by the end of April.[11] Not having received anything, in a second meet and confer on April 30, 2021, Defendants once again requested an update on the status of Plaintiff's production of financial data and Plaintiff's counsel indicated that it was not ready to make a production.[12] On May 14, 2021, Plaintiff finally produced Plaintiff's Financial Spreadsheets.[13]

After Plaintiff produced the indecipherable Financial Spreadsheets, Defendants requested a meet and confer to discuss them and other outstanding

---

[9] Griffin Decl., ¶ 20.
[10] Griffin Decl., ¶ 13.
[11] *Id*.
[12] Griffin Decl., ¶ 14.
[13] Griffin Decl., ¶ 15.

20

discovery deficiencies in a letter dated May 18, 2021.[14] Defendants outlined the issues with Plaintiff's Financial Spreadsheets as follows:

- First, WOND_0080866 only provides data for the Sena and Sena Mini Series playards. However, Wonderland provided no information whatsoever with respect to the 5 other playard product lines that it contends are '919 patent-practicing products, including the Wave Series, Twin Wave Series, MiniWave Series, and Wavell Series for Graco, and the Haven Series for Aprica. *See* Wonderland's Response to Interrogatory 3, served on February 21, 2020.

- Second, WOND_0080865 apparently provides data for various Wonderland playard products. It is not clear from the spreadsheet itself what these products are, whether they practice the '919 or '949 Patents or not, and therefore how this information is responsive to Defendants requests.

Griffin Decl., Ex. 10.

During the meet and confer on May 28, 2021 (which occurred as a result of Defendants' follow-up letter on May 18, 2021), Plaintiff's counsel stated that it would supplement its discovery responses and produce information that would "unlock" Plaintiff's Financial Spreadsheets to make it clear which products were exposed tube playards and which products were not.[15] However, Plaintiff's counsel refused to commit to a date when the supplementation would be complete.[16] On June 1, 2021, Defendants received a production from Plaintiff (over 33,300 documents) as promised by Plaintiff's counsel during the meet and confer, but Defendants have not

[14] Griffin Decl., ¶¶ 18 (Ex. 10).
[15] Griffin Decl., ¶ 19.
[16] *Id.*

received any supplemental interrogatory responses explaining how this production "unlocks" Plaintiff's Financial Spreadsheets.[17] On that same day, Defendants' counsel sent a follow up email recapping the meeting and once again requested dates for Plaintiff's discovery supplementation.[18] After not receiving a response from Plaintiff's counsel, Defendants' counsel followed up again on June 11, 2021.[19] Plaintiff's counsel, after remaining largely silent for over a month after the May 28, 2021 meet and confer, finally responded on July 8, 2021.[20] Plaintiff continues to refuse to identify its own products in the manner requested in Defendants' discovery requests.[21] Instead, Plaintiff simply points Defendants to the 33,300 documents it produced on June 1, 2021.[22] It is unreasonable for Plaintiff to require Defendants to review 33,000 documents that consist almost entirely of photographs of products and emails that refer to product models and attempt to infer Plaintiff's response to Defendants' discovery requests; simply put, Plaintiff's obligation to provide a meaningful response to Defendants' discovery requests require that it do more, yet Plaintiff has thus far refused to do so.

Because Plaintiff has improperly refused to respond and produce necessary information, the parties have reached an impasse, forcing Defendants to file this motion to compel.

> ### 2.   *The Court Should Compel Plaintiff to Supplement Interrogatory Responses to "Unlock" Plaintiff's Financial Spreadsheets*

The exchange of complete financial data by both parties is a common aspect of discovery in patent cases. *See Greenkeepers, Inc. v. Nike, Inc.*, 2009 WL 3581817,

---

[17] Griffin Decl., ¶ 20.
[18] Griffin Decl., ¶ 21 (Ex. 11).
[19] Griffin Decl., ¶ 22 (Ex. 12).
[20] Griffin Decl., ¶ 24-25 (Ex. 13).
[21] Griffin Decl., Ex. 13.
[22] *Id.*

at *5 (E.D. Pa. Oct. 29, 2009) ("[B]oth parties should exchange all documents containing underlying records which may be relevant on the topic of amount of damages, such as sales records and financial statements."). Plaintiff's Financial Spreadsheets, as they currently stand, are not formatted to provide useful information to Defendants.[23] Because they only list model numbers without additional relevant information requested in Defendants' discovery requests (i.e., whether Plaintiff contends the model practices the '919 or '949 Patents or whether it is a non-exposed tube playard) (see Exs. 14 and 15, filed under seal), Plaintiff's discovery responses and production are essentially non-responsive.

The Court should order Plaintiff to supplement its responses to Interrogatory Nos. 3, 15, and 16 to include product identifying information and an explanation for how Plaintiff's June 1, 2021 production "unlocks" Plaintiff's Financial Spreadsheets so that Defendants can begin to fully analyze their damages arguments.  To the extent that Plaintiff fails to produce this basic information immediately, it should be precluded from offering such evidence or related argument later in this case.  For example, to the extent Plaintiff fails to properly identify its alleged '919 Patent-practicing products, then it should be precluded from introducing any evidence (expert opinions or otherwise) or arguments that are based on or rely on the requested information in any way (including, for example, lost profits (and related issues, such as non-infringing alternatives), various royalty arguments, apportionment issues, commercial success arguments, and any other issue that requires analysis and understanding of Plaintiff's basic product information and related financial data).

---

[23] See Griffin Decl., Exs. 14 and 15.

### C.    Plaintiff's Position

Defendants' motion to compel supplemental responses to Interrogatory Nos. 3, 15, and 16 seeks to require Wonderland to correlate sales data from the past twenty years to show which model numbers in financial spreadsheets relate to exposed tube playards versus non-exposed tube playards, which model numbers practice the asserted '919 patent, and which model numbers practice the '949 patent, a Wonderland patent not asserted against Baby Trend in this case.

With respect to the asserted '919 patent, Defendants' motion should be denied because Wonderland should not be required to create documents it does not maintain in the ordinary course of its business when the burden of examining Wonderland's business records to create such documents is the same for Baby Trend as it is for Wonderland.  With respect to the unasserted '949 patent, Defendants' motion to compel should be denied for these same reasons, but also because the '949 patent is not relevant to any issue in this case.

#### 1.    Defendants' motion to compel interrogatory responses correlating sales data with the '919 patent should be denied

##### a.    Wonderland has identified its exposed tube playards that practice the '919 patent by model number

Defendants do not argue that Wonderland has failed to produce documents and information identifying the products that Wonderland asserts practice one or more claims of the '919 patent.  Indeed, Defendants admit that Wonderland identified *6 pages* of products *by model number* that it contends practice one or more claims of the '919 patent in response to Interrogatory No. 3.[24]

Moreover, since whether a playard has exposed tubes or covered tubes is readily apparent from a visual inspection of the playard, to further show which model numbers relate to exposed tube playards and which model numbers relate to non-

---

[24] *See* Griffin Decl., ¶ 6 (Ex. 3).

exposed tube playards, Wonderland produced emails which identify the model number and attach pre-production photographs of each playard.[25]

| Exposed Tube Playard | Non-Exposed Tube Playard |
|---|---|
| From: Anna Xia<br>Sent: Thursday, June 7, 2007 2:27 AM<br>To: Julia Ko; Peggy Fu<br>Cc: Vicky Hsu; Green Tsai; Angel Tsai<br>Subject: 9A008KR Pre-Production Sample Photos<br>Attachments: 1.doc 1.jpg; 10.jpg; 11.jpg; 12.jpg; 13.jpg; 14.jpg; 15.jpg; 16.jpg; 2.jpg; 4.jpg; 5.jpg; 6.jpg; 7.jpg; 8.jpg; 9.jpg | From: Anna Xia<br>Sent: Tuesday, October 3, 2006 7:37 AM<br>To: Morgan Hung<br>Cc: Angel Tsai; Green Tsai; Vicky Hsu; Jean Lee; Jojo Kao<br>Subject: FW: 9000CNGUPre-Production Sample Photos<br>Attachments: 1.jpg; 10.jpg; 11.jpg; 2.jpg; 3.jpg; 4.jpg; 5.jpg; 6.jpg; 7.jpg; 8.jpg; 9.jpg |

In addition, Wonderland produced a design document showing the two different types of fabric connections used in Wonderland's exposed tube playards.[26] This document shows the date the design change was made and shows the two different types of connections.[27]



上線日期：2012/8/17

---

[25] *See, e.g.*, Song Decl., Exs. B-D.

[26] *See* Song Decl., Ex. E.

[27] *See* Song Decl., Ex. E at WOND_0121123.

25

In addition, Wonderland produced the declaration of Renee Wang from Baby Trend's IPRs that discussed when Wonderland's design change was made.[28]  Baby Trend deposed Renee Wang in the IPRs regarding this declaration.

Notably, as shown in the table below, the two types of fabric connections used in Wonderland's exposed tube playards are very similar to two types of fabric connections used in Baby Trend's products accused of infringement in this case.[29]

| Baby Trend Wisteria Lane Playard | Baby Trend Royal Jungle Playard |
| --- | --- |
|  |  |

In sum, Wonderland has identified the exposed tube playards it contends practice the '919 patent by model number and has produced documents that show whether each model number is for an exposed tube playard practicing the '919 patent or for a non-exposed tube playard.

---

[28] *See* Song Decl., Ex. F.
[29] *See* Song Decl., Ex. G at Exhibits 1 and 2.

**b.    Wonderland has produced sales data for exposed tube playards and non-exposed tube playards by model number**

Defendants do not argue that Wonderland has failed to produce sales data.  In fact, Wonderland complied with Defendants' request to produce sales data for both exposed tube playards and non-exposed tube playards from 2000 to the present[30] by producing nearly 20,000 lines of sales data for over 500 playards by platform code, platform name, and model number, from the past two decades.[31]  Since, as discussed *supra* at § II.C.1, Wonderland has identified exposed tube playards and non-exposed tube playards by model number, the produced sales data can be correlated with each type of playard.

Rather, Defendants complain that Wonderland's financial spreadsheets do not indicate whether a particular model number is for an exposed tube playard or for a non-exposed tube playard.  But the sales data that Wonderland maintains in the ordinary course of its business does not include information regarding whether a particular model is for an exposed tube playard or for a non-exposed tube playard.  It simply tracks sales data by model number.

It is well-settled that "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."  Fed. R. Civ. P. 34(b)(2)(E)(i).  Thus, "[a] party responding to a Rule 34 document request cannot be compelled to prepare or create new documents."  *Van v. Wal-Mart Stores, Inc.*, 2011 WL 62499, at *1 n. 1 (N.D. Cal. 2011) (citing *Alexander v. FBI*, 194 F.R.D. 305, 310 (D.D.C.2000)); *see also Paramount Pictures Corp. v. Replay TV*, No. CV 01–9358 FMC (Ex), 2002 WL 32151632, at *2 (C.D. Cal. 2002) (citing *Alexander*, 194 F.R.D. at 310); *Apple Inc. v. Samsung Electronics Co. Ltd.*, 2013 WL 4426512, at *3 (N.D. Cal. 2013) (denying

---

[30] *See* Griffin Decl., ¶ 12 (Ex. 9).

[31] *See* Griffin Decl., ¶¶ 15-17 (Exs. 14 and 15).

motion to compel patentee to produce U.S. sales data and noting that "this court has held that a party should not be required to create completely new documents").

Defendants apparently request that Wonderland be forced to go through 20,000 lines of sales data to input information it provided in an interrogatory response for the convenience of Defendants.  Wonderland should not be required to create completely new documents, especially when the "burden of deriving or ascertaining the answer will be substantially the same for either party" by "examining, auditing, compiling, abstracting, or summarizing a party's business records."  Fed. R. Civ. P. 33(d).  Thus, Defendants' motion to compel interrogatory responses correlating sales data with the '919 patent should be denied.

### 2.    Defendants' motion to compel interrogatory responses correlating sales data with the '949 patent should be denied.

As discussed *infra* at § V.C, the Court should deny Defendants' request that Wonderland identify products that practice the '949 patent because that patent is not relevant to any issue in this case.  At minimum, for the reasons discussed *supra* at § II.B, Wonderland should not be forced to go through 20,000 lines of sales data to input information regarding whether a particular model practices a patent not asserted in this case.  Thus, Defendants' motion to compel interrogatory responses correlating sales data with the '949 patent should be denied.

## V.   DEFENDANTS' INTERROGATORY NO. 17 AND REQUESTS FOR PRODUCTION NOS. 74-77 AND 111-113

### A.   Defendants' Requests and Plaintiff's Response

On October 13, 2014 Defendants served their First Set of Requests for Production ("Defendants' First Set of RFPs"), which included Request for Production Nos. 74-77.[32] On November 26, 2014 Plaintiff served its objections and responses to Defendants' First Set of RFPs.[33] On April 6, 2021 Defendants served their Defendants' Third Set of ROGs, which included Interrogatory No. 17.[34] On May 6, 2021 Plaintiff served its objections and responses to Defendants' Third Set of ROGs.[35] On April 6, 2021 Defendants served their Fourth Set of Requests for Production ("Defendants' Fourth Set of RFPs"), which included Request No. 111-113.[36] On May 6, 2021 Plaintiff served its objections and responses to Defendants' Fourth Set of RFPs.[37] Pursuant to L.R. 37-2, the pertinent definitions, requests, and responses are reproduced below:

**DEFINITIONS:**

The term "Non-Exposed-Tube Playard" means and Relates to any playard product that Wonderland has ever manufactured, sold, offered for sale, or imported into the United States that has fabric, mesh or other enclosure member covering or obscuring the outside of the vertical corner tubes of the playard.

**INTERROGATORY NO. 17:** For each product listed in response to Interrogatory Nos. 15 and 16, Identify the total number of units sold, total sales in dollar value, costs, location of each sale, and the applicable gross and net profit margins.

[32] Griffin Decl., ¶ 9 (Ex. 6).
[33] Griffin Decl., ¶ 10 (Ex. 7).
[34] Griffin Decl., ¶ 7 (Ex. 4).
[35] Griffin Decl., ¶ 8 (Ex. 5).
[36] Griffin Decl., ¶ 11 (Ex. 8).
[37] Griffin Decl., ¶ 12 (Ex. 9).

**RESPONSE TO INTERROGATORY NO. 17:** Wonderland incorporates by reference its general and specific objections to Interrogatory Nos. 15 and 16. Wonderland further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable doctrine of privilege or immunity. Wonderland further objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to Defendants' needs in this case. Wonderland further objects to this Interrogatory as vague, ambiguous, overbroad, and unduly burdensome because it is unlimited (in part) as to time or geographic location. Wonderland further objects to this Interrogatory to the extent that it seeks information protected by responding party's or third parties' right to privacy and/or seeks confidential, proprietary, trade secret, or other sensitive business and/or financial data or information. Wonderland further objects to this Interrogatory as containing multiple discrete subparts in violation of Federal Rule of Civil Procedure 33(a).

Subject to its general and specific objections, (a) for Interrogatory No. 15, Wonderland incorporates its response to Interrogatory No. 15 and reiterates that it is not aware of any responsive information, and (b) for Interrogatory No. 16, Wonderland incorporates its response to RFP No. 111 and Interrogatory No. 16.

**REQUEST NO. 74:** All of Plaintiff's annual reports since 2000.

**RESPONSE TO REQUEST NO. 74:** Wonderland objects to this request as overly broad for seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and that exceed the permissible scope of discovery under the Federal Rules, the Local Rules, or any relevant Order entered by the Court.

Subject to and without waiving its objections, Wonderland will make reasonable efforts to locate and produce its responsive, non-privileged annual reports

for the relevant period to the extent such documents are in Wonderland's possession, custody, or control.

**REQUEST NO. 75:** All of Plaintiff's financial statements since 2000.

**RESPONSE TO REQUEST NO. 75:** Wonderland objects to this request as overly broad for seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and that exceed the permissible scope of discovery under the Federal Rules, the Local Rules, or any relevant Order entered by the Court.

Subject to and without waiving its objections, Wonderland will make reasonable efforts to locate and produce its responsive, non-privileged annual financial statements for the relevant period to the extent such documents are in Wonderland's possession, custody, or control.

**REQUEST NO. 76:** All Documents, Things, and ESI concerning accounting audits, reports, statements, and/or analyses of Plaintiff since 2000.

**RESPONSE TO REQUEST NO. 76:** Wonderland objects to this request as unduly burdensome and overly broad. Wonderland objects to this request as overly broad for seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and that exceed the permissible scope of discovery under the Federal Rules, the Local Rules, or any relevant Order entered by the Court. Wonderland's accounting audits, reports, statement, and analyses encompasses an overly broad and vague range of documents. Wonderland further objects to this request to the extent that it seeks privileged attorney-client communication or attorney work product.

Subject to and without waiving its objections, Wonderland will make reasonable efforts to locate and produce responsive, non-privileged documents related to Wonderland's accounting for the relevant period, to the extent such documents are in Wonderland's possession, custody, or control.

**REQUEST NO. 77:** All Documents, Things, and ESI relating to Your revenues and expenses for any product that you contend is covered by the '919 Patent.

**RESPONSE TO REQUEST NO. 77:** Wonderland objects to this request as unduly burdensome and overly broad, and on the grounds that the term "relating to" is vague and ambiguous. Wonderland objects to this request as overly broad for seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and that exceed the permissible scope of discovery under the Federal Rules, the Local Rules, or any relevant Order entered by the Court. Wonderland objects to this request to the extent that it seeks information not in the possession, custody, or control of Wonderland.

Subject to and without waiving its objections, Wonderland will make reasonable efforts to locate and produce non-privileged, responsive documents related to Wonderland's revenues and expenses for the relevant period for any product that Wonderland contends is covered by the '919 Patent, to the extent such documents are in Wonderland's possession, custody, or control.

**REQUEST NO. 111:** All Documents, Things, and ESI Related to the total number of units sold, total sales in dollar value, costs, location of each sale, customer, and the applicable gross and net profit margins for all sales of Non-Exposed-Tube Playards after January 1, 2000 on a monthly basis.

**RESPONSE TO REQUEST NO. 111:** In addition to its general objections, Wonderland further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable doctrine of privilege or immunity. Wonderland further objects to this Request as overbroad, unduly burdensome, and not proportional to Defendants' needs in this case, specifically as to "All Documents, Things, and ESI." Wonderland further objects to this Request as seeking ESI that is governed by the

ESI Order (ECF No. 176) in this matter; Wonderland will not conduct further searches of custodian files for this Request if the Request is not covered by the agreed-upon search terms negotiated by the Parties. Wonderland further objects to this Request as vague, ambiguous, overbroad, and unduly burdensome because it is unlimited as to geographic location. Wonderland further objects to this Request to the extent that it seeks information protected by responding party's or third parties' right to privacy and/or seeks confidential, proprietary, trade secret, or other sensitive business and/or financial data or information.

Subject to its general and specific objections, Wonderland will produce responsive documents to the extent such documents exist, can be located after a reasonable search, are not subject to any privilege or immunity, are within Wonderland's possession, custody or control and are kept in the usual course of business.

**REQUEST NO. 112:** All Documents, Things, and ESI Related to the total number of units sold, total sales in dollar value, costs, location of each sale, customer, and the applicable gross and net profit margins for all sales of playard products sold by Plaintiff that you allege practice Any claim of the '949 Patent on a monthly basis.

**RESPONSE TO REQUEST NO. 112:** In addition to its general objections, Wonderland further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable doctrine of privilege or immunity. Wonderland further objects to this Request as overbroad, unduly burdensome, and not proportional to Defendants' needs in this case, specifically as to "All Documents, Things, and ESI." Wonderland further objects to this Request as seeking ESI that is governed by the ESI Order (ECF No. 176) in this matter; Wonderland will not conduct further searches of custodian files for this Request if the Request is not covered by the agreed-upon search terms negotiated by the Parties. Wonderland further objects to

this Request as overbroad, unduly burdensome, and lacking relevance because Wonderland is not alleging that any "playard products sold by Plaintiff … practice Any claim of the '949 Patent." Wonderland further objects to this Request as vague, ambiguous, overbroad, and unduly burdensome because it is unlimited as to time or geographic location. Wonderland further objects to this Request to the extent that it seeks information protected by responding party's or third parties' right to privacy and/or seeks confidential, proprietary, trade secret, or other sensitive business and/or financial data or information.

Subject to its general and specific objections, because the '949 Patent is not asserted in this matter, Wonderland does not contend that any Wonderland playard products practice any claim of the '949 Patent.

**REQUEST NO. 113:** All Documents, Things, and ESI Related to the total number of units sold, total sales in dollar value, costs, location of each sale, customer, and the applicable gross and net profit margins for all sales of playard products sold by Plaintiff that you allege practice Any claim of the '919 Patent on a monthly basis.

**RESPONSE TO REQUEST NO. 113:** In addition to its general objections, Wonderland further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable doctrine of privilege or immunity. Wonderland further objects to this Request as overbroad, unduly burdensome, and not proportional to Defendants' needs in this case, specifically as to "All Documents, Things, and ESI." Wonderland further objects to this Request as seeking ESI that is governed by the ESI Order (Dkt. 176) in this matter; Wonderland will not conduct further searches of custodian files for this Request if the Request is not covered by the agreed-upon search terms negotiated by the Parties. Wonderland further objects to this Request as vague, ambiguous, overbroad, and unduly burdensome because it is unlimited as to time or geographic location. Wonderland further objects to this Request to the extent

34

that it seeks information protected by responding party's or third parties' right to privacy and/or seeks confidential, proprietary, trade secret, or other sensitive business and/or financial data or information.

Subject to its general and specific objections, Wonderland will produce responsive documents to the extent such documents exist, can be located after a reasonable search, are not subject to any privilege or immunity, are within Wonderland's possession, custody or control and are kept in the usual course of business.

## B. Defendants' Position

### 1. Plaintiff's Improper Refusal to Produce Cost Data for Its Own Exposed and Non-Exposed Tube Products in its Financial Spreadsheets

These discovery requests seek basic financial information and data necessary in any patent case. Plaintiff has unreasonably delayed its production of relevant financial data and Plaintiff's counsel has refused to reasonably engage on this topic and provide a relevant timeframe for when Defendants can expect to receive any cost data from Plaintiff's.

Defendants have raised these issues related to Plaintiff's deficient production of financial information on numerous occasions. During a meet and confer on April 12, 2021, the parties discussed various outstanding discovery disputes, including the complete lack of production (at that point in time) of updated financial data from Plaintiff.[38] Plaintiff's counsel assured Defendants that a production of financial data would be made by the end of April.[39] Not having received anything, in a second meet and confer on April 30, 2021, Defendants once again requested an update on the status of Plaintiff's production of financial data.[40] Finally, on May 14, 2021, Plaintiff

---

[38] Griffin Decl., ¶ 13.

[39] *Id.*

[40] Griffin Decl., ¶ 14.

produced Plaintiff's Financial Spreadsheets, which were indecipherable from Defendants perspective as discussed above and completely lacked any cost data.[41]

After Plaintiff produced Plaintiff's Financial Spreadsheets, Defendants requested a meet and confer to discuss them and other outstanding discovery deficiencies in a letter dated May 18, 2021.[42] Defendants outlined the issue with Plaintiff's Financial Spreadsheets as it relates to the lack of cost data as follows:

- Third, even the information provided in these spreadsheets is insufficient. For example, Wonderland failed to provide any information whatsoever with respect to costs for these products.

Griffin Decl., Ex. 10.

During the meet and confer on May 28, 2021 (which occurred as a result of Defendants' follow-up letter on May 18, 2021), Plaintiff's counsel stated that Plaintiff would be providing cost information reciprocal to that provided to Plaintiff by Defendants.[43] However, Plaintiff's counsel refused to commit to a date when the cost data would be produced.[44] On June 1, 2021, Defendants received a production from Plaintiff (over 33,300 documents) as promised by Plaintiff's counsel during the meet and confer.[45] Notably, this production did not include any information related to cost data as requested and promised.[46] On that same day, Defendants' counsel sent a follow up email recapping the meeting and once again requested dates for Plaintiff's discovery supplementation.[47] After not receiving a response from Plaintiff's counsel, Defendants' counsel followed up again on June 11, 2021.[48]

---

[41] Griffin Decl., ¶¶ 15-17 (Exs. 14 and 15).
[42] Griffin Decl., ¶ 18 (Ex. 10).
[43] Griffin Decl., ¶ 19.
[44] *Id.*
[45] Griffin Decl., ¶ 20.
[46] *Id.*
[47] Griffin Decl., ¶ 21 (Ex. 11).
[48] Griffin Decl., ¶ 22 (Ex. 12).

36

On July 8, 2021, Plaintiff's counsel sent a letter addressing several of these discovery disputes, including this issue related to cost data.[49] Plaintiff's counsel pointed to four documents that Plaintiff has produced, which are duplicative of a portion of the requested costs data.[50] To be clear, these documents only contain financial data for certain of Plaintiff's allegedly '919 Patent practicing products from 2011-2013. Further, that this (albeit limited) information was produced confirms that remaining data exists and that Plaintiff is simply refusing to provide it in its entirety as requested by Defendants.  Instead, Plaintiff's current position, as of July 8, 2021 is that Defendants must explain the relevance of the costs information—the same information Plaintiff demanded from Defendants—before producing the same.[51]  The relevance is clear: it is, at minimum, part of the data that experts consider when assessing a reasonable royalty, including under various of the oft-analyzed *Georgia Pacific* factors. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D. N.Y. 1970) (listing factors relied on to establish a reasonable royalty).

The four spreadsheets identified by Plaintiff and the information therein hardly begins to address what Defendants discovery requests cover and Plaintiff's insistence that Defendants explain how they plan to use this information before Plaintiff considers whether to produce it is improper. Because Plaintiff has improperly refused to produce this information, the parties have reached an impasse, forcing Defendants to file this motion to compel.

### 2.    The Court Should Compel Plaintiff to Produce Cost Data and Supplement Interrogatory Responses to "Unlock" Plaintiff's Financial Spreadsheets

The exchange of complete financial data by both parties is a common aspect of discovery in patent cases. *See Greenkeepers, Inc. v. Nike, Inc.*, 2009 WL 3581817,

---

[49] Griffin Decl., ¶ 23 (Ex. 13).
[50] Griffin Decl., Ex. 13
[51] *Id.*

at *5 (E.D. Pa. Oct. 29, 2009) ("[B]oth parties should exchange all documents containing underlying records which may be relevant on the topic of amount of damages, such as sales records and financial statements."). Plaintiff's Financial Spreadsheets, as they currently stand, do not represent all relevant underlying sales data (i.e., cost data). The complete lack of cost data—both per unit and any other miscellaneous cost information—makes Plaintiff's Financial Spreadsheets incomplete.[52]

The Court should order Plaintiff to produce the requested cost data so that Defendants can begin to fully analyze their damages arguments.  To the extent that Plaintiff fails to produce this basic information immediately, it should be precluded from offering such evidence or related argument later in this case.  For example, to the extent Plaintiff fails to produce cost information for its '919 Patent practicing products, then it should be precluded from introducing any evidence (expert opinions or otherwise) or arguments that are based on or rely on the requested information in any way (including, for example, lost profits (and related issues, such as non-infringing alternatives), various royalty arguments, apportionment issues, commercial success arguments, and any other issue that requires analysis and understanding of Plaintiff's basic financial data).

---

[52]   See Griffin Decl., Exs. 14 and 15.

## C.     Plaintiff's Position

Defendants' motion to compel supplemental responses to Interrogatory No. 17 and documents responsive to Request for Production Nos. 74-77 and 111-113 seek various cost related data for exposed tube playards, non-exposed tube playards, products that practice the '919 patent, and products that practice the '949 patent. Defendants' motion should be denied because Defendants have not demonstrated the relevance of the requested information or explained how any purported relevance outweighs the burden on Wonderland to collect and produce such data from the last twenty years.

### 1.     Wonderland Does Not Seek Damages Under a Lost Profits Theory.

As an initial matter, Wonderland recently informed Defendants that it is no longer seeking damages under a lost profits theory.[53]  Considering this change in Wonderland's damages theory, Wonderland properly asked whether Defendants still seek cost data from Wonderland, the time period over which Defendants sought cost data, and whether Defendants agreed to produce similar data for the accused products.[54]  Defendants contend that Wonderland's request for an explanation of the relevance of the requested information is somehow improper.  But "[u]pon a motion to compel discovery, the movant has the initial burden of demonstrating relevance." *United States v. McGraw-Hill Cos., Inc.*, No. CV 13-779-DOC JCGX, 2014 WL 1647385, at *8 (C.D. Cal. Apr. 15, 2014) (internal citation omitted).

### 2.     Baby Trend's Cost Data, not Wonderland's Cost Data, Is Relevant to Damages under a Reasonable Royalty Theory.

Defendants' only argument regarding the relevance of Wonderland's cost data is with respect to damages under a reasonable royalty theory.  Defendants, however, do not provide a detailed explanation of how Wonderland's cost data is relevant to

---

[53] *See* Griffin Decl., Ex. 13 at 4.
[54] *Id.*

the determination of a reasonable royalty.  Rather, Defendants vaguely argue that cost data is "part of the data that experts consider when assessing a reasonable royalty, including under various of the oft-analyzed *Georgia Pacific* factors."

A closer look at the *Georgia-Pacific* factors and their applicability to the facts of this case, however, show that it is Baby Trend's cost data, not Wonderland's cost data, that is most relevant to the reasonable royalty determination.  Of the 15 *Georgia-Pacific* factors considered in determining a reasonable royalty, factors 8, 12, 13, and 15 address profits (and thus costs):

> 1.  The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.
>
> 2.  The rates paid by the licensee for the use of other patents comparable to the patent in suit.
>
> 3.  The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.
>
> 4.  The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.
>
> 5.  The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promotor.
>
> 6.  The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of

the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7.  The duration of the patent and the term of the license.

***8.  The established profitability of the product made under the patent; its commercial success; and its current popularity.***

9.  The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10.  The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11.  The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

***12.  The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.***

***13.  The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.***

14.  The opinion testimony of qualified experts.

41

> **15.  The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee —who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.**

*See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D. N.Y. 1970) (emphasis added).  For each relevant factor, profit information relates to the amount a willing licensee would be willing to pay a willing licensor and still make a reasonable profit.  Thus, it is the licensee's profits, not the licensor's profits, that are directly relevant to the determination of a reasonable royalty.

In the typical scenario, the licensor's profits from sales of patented products may also be relevant to examining the licensee's projected profits from sales of patented products.  But here, Wonderland's profits are not comparable to Baby Trend's profits for sales of playards because of the parties' different roles in the supply chain.  Wonderland is a manufacturer of playards and Wonderland's customers, not Wonderland, compete in the marketplace with Baby Trend's accused products.  Thus, for Wonderland products that practice the '919 patent, it is Graco's profits or Nuna's profits, not Wonderland's profits, that are comparable to Baby Trend's profits.

If anything, Wonderland's sales data is comparable to Baby Trend's cost data because Baby Trend purchases playards from manufacturers in China and sells those

playards for a profit in the U.S.  Wonderland has produced such sales data for all its playards from the past 20 years.[55]  Thus, Wonderland has produced the information relevant to the determination of a reasonable royalty in this case.

### 3. To the Extent Wonderland's Profits Are Relevant to the Determination of a Reasonable Royalty, Wonderland Has Produced Non-Burdensome Cost Data

Defendants concede that Wonderland has produced several documents containing cost and profit information for exposed playards it sold in 2011-2013.[56] Since Baby Trend's infringement began on January 15, 2013, to the extent Wonderland's cost data is relevant to the determination of a reasonable royalty, the 2011-2013 cost data would be the most relevant information to the hypothetical negotiation.

Yet Defendants seek cost data not just for products that practice the asserted '919 patent around the hypothetical negotiation, but also for exposed tube playards and non-exposed tube playards from 2000-2020.  But pre-2010 would be extremely burdensome for Wonderland to collect and produce because such data is stored on back up tapes.  The parties stipulated and the Court ordered that "[a]bsent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media."[57]  Defendants have not explained how the relevance of such pre-2010 data outweighs the burden of restoring data from back up tapes.  Indeed, even after finding that certain financial data is relevant, courts have still considered the burden in producing such data over long periods of time.  *See, e.g.*, *Philippi-Hagenbuch, Inc. v. W. Tech. Servs. Int'l, Inc.*, No. 12-CV-1099, 2013 WL 2419934, at *5 (C.D. Ill. June 3, 2013) (granting motion to compel pre-issuance sales information from accused infringer based on relevance to

---

[55] *See* Griffin Decl., Exs. 14-15.
[56] *See, e.g.*, Song Decl., Exs. H-K.
[57] ESI Order (ECF No. 176).

JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL
RESPONSES TO DISCOVERY REQUESTS
Case No. 5:14-cv-001153-JWH-SP

1   willfulness, copying, commercial success, reasonable royalty but limiting sales
2   information from 2004-2008 not from 1999-2008).

3      For these reasons, Defendants' motion to compel production of cost data
4   should be denied.

## VI.   DEFENDANTS' INTERROGATORY NO. 15

### A.   Defendants' Interrogatory and Plaintiff's Response

On April 6, 2021, Defendants served its Third Set of ROGs, which included Interrogatory 15.[58] On May 6, 2021, Plaintiff served its objections and responses to Defendants' Third Set of ROGs.[59] Pursuant to L.R. 37-2, the pertinent definitions, requests, and responses are reproduced below:

**INTERROGATORY NO. 15:** Identify by name, model number, and Any other identifying indicia Any Wonderland playard products that You contend practice Any claim of the '949 Patent.

**RESPONSE TO INTERROGATORY NO. 15:** In addition to its general objections, Wonderland further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable doctrine of privilege or immunity. Wonderland further objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to Defendants' needs in this case. Wonderland further objects to this Interrogatory as overbroad, unduly burdensome, and lacking relevance because Wonderland is not "contending" that any "playard products … practice Any claim of the '949 Patent." Wonderland further objects to this Interrogatory as vague and ambiguous as to the phase "Any other identifying indicia." Wonderland further objects to this Interrogatory as vague, ambiguous, overbroad, and unduly burdensome because it is unlimited as to time or geographic location. Wonderland further objects to this Interrogatory to the extent that it seeks information protected by responding party's or third parties' right to privacy and/or seeks confidential, proprietary, trade secret, or other sensitive business and/or financial data or information.

---

[58]  Griffin Decl., ¶ 7 (Ex. 4).
[59]  Griffin Decl., ¶ 8 (Ex. 5).

Subject to its general and specific objections, because the '949 Patent is not asserted in this matter, Wonderland does not contend that any Wonderland playard products practice any claim of the '949 Patent.

**B.    Defendants' Position**

> **1.    *Plaintiff's Improper Refusal to Identify any '949 Patent-Practicing Products***

The structure and operation of Plaintiff's various playards is relevant to damages and secondary considerations of nonobviousness. Defendants' Interrogatory No. 15 simply requests identifying information for playards that Plaintiff manufactures and sells that practice any claim of the '949 Patent, which claims an alternative design for an exposed tube playard that Plaintiff alleges was conceived of and reduced to practice at the same time as the design claimed in the '919 Patent. The differences between the designs and why one is chosen by Plaintiff versus another is relevant to demand for the patented design which, in turn, is relevant to various damages and secondary considerations issues.

Defendants raised this issue in their May 18, 2021 letter regarding Plaintiff's discovery deficiencies.[60] During the subsequent meet and confer on May 28, 2021, Plaintiff's counsel agreed to supplement Plaintiff's response to Interrogatory No. 15 in the coming weeks, but, as mentioned above, refused to commit to a date when it would supplement prior to the end of fact discovery.[61] After delay in responding to Defendants' counsel's emails on June 1, 2021 and June 11, 2021, Plaintiff's counsel finally responded in a July 8, 2021 letter.[62] In the letter, Plaintiff's counsel mistakenly states that "Defendants withdrew their request that Wonderland identify playards that it contends practices the '949 patent[.]"[63] On the contrary, Defendants are still

---

[60] Griffin Decl., ¶ 18 (Ex. 10).
[61] Griffin Decl., ¶ 19.
[62] Griffin Decl., ¶ 23 (Ex. 13).
[63] Griffin Decl., Ex. 13.

interested in obtaining this information from Plaintiff for the reasons discussed in more detail below. Thus, the parties have reached an impasse, making this motion to compel necessary.

### 2. The Court Should Compel Plaintiff to Supplement Its Response to Interrogatory No. 15

Because the '949 Patent is not asserted in this case, whether and to what extent Plaintiff's products practice the '949 Patent as opposed to the '919 Patent is highly relevant to damages, including damages of lost profits and reasonable royalty. *See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009) ("[T]he first *Panduit* factor simply asks whether demand existed for the 'patented product,' i.e., a product that is 'covered by the patent in suit[.]'") (citing *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548-49 (Fed. Cir. 1995)); *see also J.T. Eaton & Co. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997) ("[Patentee] cannot demonstrate commercial success, for purposes of countering the challenge of obviousness, unless it can show that the commercial success of the product results from the claimed invention."); *see also Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D. N.Y. 1970) (listing factors relied on to establish a reasonable royalty, including "[t]he established profitability of the product made under the patent; its commercial success; and its current popularity" and "[t]he utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.").

The requested information is also relevant to secondary considerations of nonobviousness and the attendant issue of nexus between the patented design and any secondary considerations. *See Boston Scientific SciMed, Inc. v. Iancu*, 811 Fed.Appx. 618, 624 (Fed. Cir. 2020) (finding PTO properly rejected patentee's evidence of commercial success since the patentee failed to show that the success was due to the patented features rather than its already existing large market share);

*WesternGeco LLC v. ION Geophysical Corp.*, 889 F.3d 1308, 1330-31 (Fed. Cir. 2018) (finding patentee's evidence of alleged commercial success did not show a proper nexus where the feature that drove the commercial sales was not one of the patented features); *In re Affinity Labs of Texas, LLC*, 856 F.3d 883, 901 (Fed. Cir. 2017) (finding that PTO properly gave little weight to alleged secondary consideration of commercial success where the patentee had failed to make any showing of how the overall market sales had a nexus to claims of the challenged patent).

Plaintiff's refusal to respond substantively to Interrogatory No. 15 "because the '949 Patent is not asserted in this matter" and therefore "Wonderland does not contend that any Wonderland playard products practice any claim of the '949 Patent" is an attempt to improperly dodge the underlying question. To the extent Plaintiff has not previously and does not currently manufacture playards that practice one claim of the '949 Patent, Plaintiff should explicitly state that fact. Otherwise, Plaintiff should be required to supplement its response to Interrogatory No. 15 to fully respond because Plaintiff is in the best position to identify its own products and make clear which products it alleges practice its own patents and which do not.

Therefore, the Court should order Plaintiff to supplement its response to Interrogatory No. 15 immediately so that Defendants can review the financial data and prepare for fact and expert depositions.  To the extent that Plaintiff now refuses to supplement its response, Plaintiff should be precluded from offering its own playard sales data as evidence of consumer demand and the related damages and secondary considerations issues.

1   ### C.   Plaintiff's Position

2      Defendants' motion to compel Wonderland to identify any of its own products

3   that practice any claim of U.S. Patent No. 6,954,949 ("the '949 patent") is based on

4   a misunderstanding of the relationship between the '949 patent and the '919 patent.

5      The '949 patent is entitled "Playpen with Double Columns at Each Corner"

6   and claims a playard with exposed outer support tubes.[64]  Both the '919 patent and

7   the '949 patent name Shun-Min Chen as the sole inventor and list Wonderland as the

8   assignee.  Wonderland does not assert a claim for infringement of the '949 patent

9   against Baby Trend in this case.

10     Defendants contend that the '949 patent "claims an alternative design for an

11  exposed tube playard that Plaintiff alleges was conceived of and reduced to practice

12  at the same time as the design claimed in the '919 Patent" and "[t]he differences

13  between the designs and why one is chosen by Plaintiff versus another is relevant to

14  demand for the patented design which, in turn, is relevant to various damages and

15  secondary considerations issues."  But whether a product practices the '949 patent

16  does not itself inform whether the product does not practice the '919 patent, or vice

17  versa.  In fact, in a related case against Kids II, Wonderland asserted that the same

18  accused products infringe both the '949 and '919 patents.[65]

19     Defendants also contend that "whether and to what extent Plaintiff's products

20  practice the '949 Patent as opposed to the '919 Patent is highly relevant to damages,

21  including damages of lost profits and reasonable royalty."  But, as discussed above,

22  Wonderland does not assert damages under a lost profits theory.

23     With respect to a reasonable royalty, Defendants cite *Georgia-Pacific* factor

24  9: "[t]he utility and advantages of the patent property over the old modes or devices,

25  if any, that had been used for working out similar results."  But the '949 patent was

26

27  [64] *See* Song Decl., Ex. L.

28  [65] *See* Song Decl., Ex. M.

1  filed on April 19, 2004 and issued on October 18, 2005, and is thus, not prior art to

2  the '919 patent.

3         In sum, because whether Wonderland's products practice the unasserted '949

4  patent is not relevant to any issue in this case, Defendants' motion to compel

5  discovery related to the '949 patent should be denied.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VII.   DEFENDANTS' INTERROGATORY NO. 9

### A.   Defendants' Request and Plaintiff's Response

On January 8, 2020, Defendants served their First Set of ROGs, which included Interrogatory No. 9.[66] On February 21, 2020, Plaintiff served its objections and responses to Defendants' First Set of ROGs.[67] Pursuant to L.R. 37-2, the pertinent requests and responses are reproduced below:

**INTERROGATORY NO. 9:** Identify and describe in detail the complete factual and legal bases for which You believe a permanent injunction, as requested in Your Complaint, is an appropriate remedy, including the facts and/or Allegations relevant to Each of the four factors the Court is to consider under *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006); namely, whether and how You have suffered an irreparable injury, whether and how remedies available at law are inadequate to compensate for that injury, whether and how a remedy in equity is warranted considering the balance of hardships between You and each of the Defendants, and whether and how the public interest would not be disserved by a permanent injunction; and produce All Documents, Things, and ESI concerning the subject matter of this interrogatory and/or Your response hereto.

**RESPONSE TO INTERROGATORY NO. 9:** Wonderland objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable doctrine of privilege or immunity.

Wonderland also objects to this interrogatory to the extent it purports to require production of documents.

Subject to its general and specific objections, Wonderland states that it and Baby Trend compete in the playard market where Baby Trend, through its willful

---

[66] Griffin Decl., ¶ 5 (Ex. 2).
[67] Griffin Decl., ¶ 6 (Ex. 3).

infringement of the '919 Patent, has intentionally and irreparably harmed Wonderland. By choosing to infringe rather than independently develop its own products, Baby Trend has been able to compete against Wonderland in the United States and elsewhere without having to bear the cost of research and development. This has given Baby Trend an unfair advantage in the market, and allowed Baby Trend to make sales that should have been made by Wonderland. Wonderland will not be able to capture the market share it would have earned without Baby Trend's infringement unless that infringement is forced to end.

### B.    Defendants' Position

#### 1.    *Plaintiff's Improper Refusal to Provide the Factual Basis for Its Permanent Injunction Remedy*

The factual basis for Plaintiff's contention that it is entitled to a permanent injunction remedy is basic information that must be provided.  In Defendants' May 18, 2021 letter, Defendants addressed Plaintiff's lack of factual support in its interrogatory response and requested that Plaintiff supplement its response to Interrogatory No. 9 to correct this deficiency.[68] In the subsequent meet and confer on May 28, 2021, Plaintiff agreed to supplement its response to address this deficiency.[69] Again, Plaintiff never committed to a date when it would supplement this response.[70] Plaintiff ignored Defendants' follow-up emails on June 1, 2021 and June 11, 2021 until it finally responded with a letter on July 8, 2021.[71] However, in the letter Plaintiff's counsel did not respond substantively and only stated that Plaintiff "plans to supplement its response to Interrogatory No. 9 as soon as practically possible."[72] Thus, the parties have reached an impasse, making this motion to compel necessary.

---

[68] Griffin Decl., ¶ 18 (Ex. 10).
[69] Griffin Decl., ¶ 19.
[70] *Id.*
[71] Griffin Decl., ¶ 23 (Ex. 13).
[72] Griffin Decl., Ex. 13.

### 2. *The Court Should Compel Plaintiff to Supplement Its Response to Interrogatory No. 9*

"According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Thus far, Plaintiff has utterly failed to address these four factors outside of conclusory statements, none of which are backed by any facts.

First, Plaintiff has not presented any facts that it has suffered an irreparable harm. Plaintiff has not provided sufficient facts to show that allegedly infringing sales made by Defendants would have been made by Plaintiff, especially considering that Baby Trend competes for customers in the United States with Graco, Nuna, and other playard distributors, not Plaintiff. *See ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*, 694 F.3d 1312, 1339 (Fed. Cir. 2012) ("ActiveVideo does not share a customer base with Verizon. Verizon competes for customers with Cablevision, not ActiveVideo. The focus of irreparable harm analysis should be on harm to ActiveVideo, not Cablevision."); *see also Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 809 Fed.Appx. 965, 976 (Fed. Cir. 2020) ("[A] lack of direct competition is a substantial basis for finding no irreparable harm.").

Second, Plaintiff has not provided any basis under the second *eBay* factor that monetary damages would be inadequate to compensate for any alleged injury. For instance, Plaintiff's conclusory statement that "Wonderland will not be able to capture the market share it would have earned without Baby Trend's infringement unless that infringement is forced to end" is not supported by any factual evidence

such as, for example, evidence of lost sales, a decrease in market share after infringement began, or damage to Plaintiff's brand recognition or customer goodwill. *See TEK Global, S.R.L. v. Sealant Systems International, Inc.*, 920 F.3d 777, 792 (Fed. Cir. 2019) (affirming the grant of a permanent injunction because of "[t]he inherent difficulty of quantifying loss of market share, brand recognition, and customer goodwill and of estimating monetary damages[.]"). Moreover, Plaintiff has not even asserted that damages would be inadequate to compensate for the alleged infringement.

Third, Plaintiff has not provided any factual analysis regarding whether, or why, the balance of hardships leans in favor of granting a permanent injunction. For instance, the Federal Circuit has explained that "the 'balance of hardships' assesses the relative effect of granting or denying an injunction on the parties" using several factors for this analysis, including "the parties' sizes, products, and revenue sources." *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010). Plaintiff does not address any of these factors in its current response.

Fourth, Plaintiff has not provided a factual analysis regarding how a permanent injunction would impact the public's interest. For instance, The Federal Circuit has instructed that "the touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects." *Id.* at 863. Plaintiff does not address this factor in its response.

The Court should order Plaintiff to supplement its response to Interrogatory No. 9 immediately.  To the extent that Plaintiff refuses to supplement its response, Plaintiff should be precluded from arguing that it is entitled to a permanent injunction in this case.

## C.   Plaintiff's Position

Wonderland is not refusing to explain its position on its request for a permanent injunction. In fact, Wonderland plans to supplement its response to Interrogatory No. 11 as soon as practically possible. But the facts relevant to Wonderland's request for a permanent injunction and specifically, discovery regarding market share information, is the subject of ongoing discovery.

Baby Trend knows very well that Wonderland does not itself possess documents related to market share. Indeed, in its Opposition to Defendants' Motion to Stay Pending IPR, Wonderland admitted that "[t]here is not yet evidence on the record by which the parties or the Court can quantify the market share of Baby Trend's play yards versus that of Wonderland's play yards."[73]  In the IPRs, Wonderland submitted evidence from Graco related to market share.[74] But because such market share data did not account for the current status of the market, Wonderland plans to serve Graco with a subpoena in this case to obtain updated market share information.[75]

In addition, Wonderland's Request No. 218 sought documents related to market share from Baby Trend. Baby Trend, however, objected to the request "on the grounds and to the extent that Plaintiff requires Defendants to disclose (1) any documents, things, and/or other information received by Defendants from a Third Party under a non-disclosure agreement, (2) the content of any part of any agreement between Defendants and a Third Party that, by its terms, may not be disclosed by Defendants, and/or (3) any other confidential information, proprietary information, or trade secrets of a Third Party."[76]  Thus, despite having a protective order in place to protect confidential information, Baby Trend evidently possesses market share

---

[73] Wonderland's Opposition to Defendants' Motion to Stay Pending IPR at 23 (ECF No. 54).
[74] Song Decl., Ex. N.
[75] Song Decl., Ex. O.
[76] Song Decl., Ex. P.

1    information that it refuses to produce to Wonderland based on confidentiality issues.

2    Based on Baby Trend's refusal to produce relevant information, Wonderland must

3    now file a motion to compel production of such information from Baby Trend.  Until

4    Defendants provide such discovery, Defendants' motion to compel against

5    Wonderland should be denied.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VIII.   DEFENDANTS' INTERROGATORY NO. 11

### A.   Defendants' Request and Plaintiff's Response

On January 8, 2020, Defendants served their First Set of ROGs, which included Interrogatory No. 11.[77] On February 21, 2020, Plaintiff served its objections and responses to Defendants' First Set of ROGs.[78] Pursuant to L.R. 37-2, the pertinent requests and responses are reproduced below:

**INTERROGATORY NO. 11:** To the extent that You believe Baby Trend is not entitled to intervening rights in connection with the '919 Patent, Identify and describe in detail for each limitation of each Asserted Claim Your reasoning why Defendants do not have intervening rights under 35 U.S.C. § 252, including how each limitation of the Asserted Claims is substantially identical to Any claim limitations of the '957 Patent; and produce All Documents, Things, and ESI concerning the subject matter of this interrogatory and/or Your response hereto.

**RESPONSE TO INTERROGATORY NO. 11:** Wonderland objects to this interrogatory to the extent it purports to require production of documents.

The '919 reissue patent reissued on January 15, 2013. Thus, statutory intervening rights do not apply to products made after January 15, 2013. Baby Trend is not entitled to equitable intervening rights either, at least because it is a willful infringer.

### B.   Defendants' Position

#### 1.   *Plaintiff's Improper Refusal to Describe Why Defendants Are Not Entitled to Intervening Rights*

The relevance of the factual basis for Plaintiff's assertion that Defendants are not entitled to equitable intervening rights is clear and undisputable. In Defendants' letter regarding Plaintiff's discovery deficiencies from May 18, 2021, Defendants

---

[77] Griffin Decl., ¶ 5 (Ex. 2).
[78] Griffin Decl., ¶ 6 (Ex. 3).

addressed Plaintiff's lack of factual evidence supporting its assertion that Defendants are not entitled to equitable intervening rights and requested that Plaintiff supplement its response to Interrogatory No. 11 to correct this deficiency.[79] In the subsequent meet and confer on May 28, 2021, Plaintiff agreed to supplement its response to address this deficiency once Defendants had provided additional evidence supporting their intervening rights arguments.[80] Again, Plaintiff never committed to a date when it would supplement this response.[81] Defendants have provided additional explanation for their equitable intervening rights, including in the form of sales data, purchase order records (in a production made on July 6, 2021), and explanation of the same via email. After ignoring Defendants' follow-up emails on June 1, 2021 and June 11, 2021, Plaintiff's counsel finally responded on July 8, 2021.[82] However, Plaintiff's counsel's letter states that Plaintiff's "response depends on Defendants' production of documents including purchase order records and documents relied on for Defendants' investigation of accused products."[83] As discussed above, this information has already been produced. Thus, the parties have reached an impasse, making this motion to compel necessary.

## 2.     *The Court Should Compel Plaintiff to Supplement Its Response to Interrogatory No. 11*

Courts consider several factors when assessing whether to grant equitable intervening rights. Recently the Federal Circuit affirmed the use of the following six factors in assessing whether to grant equitable intervening rights: "(1) whether substantial preparation was made by the infringer before the reissue; (2) whether the infringer continued manufacturing before reissue on advice of its patent counsel; (3)

---

[79] Griffin Decl., ¶ 18 (Ex. 10).
[80] Griffin Decl., ¶ 19.
[81] *Id.*
[82] Griffin Decl., ¶ 23 (Ex. 13).
[83] Griffin Decl., Ex. 13.

whether there were existing orders or contracts; (4)  whether non-infringing goods can be manufactured from the inventory used to manufacture the infringing product and the cost of conversion; (5) whether there is a long period of sales and operations before the patent reissued from which no damages can be assessed; and (6) whether the infringer made profits sufficient to recoup its investment." *John Bean Technologies Corporation v. Morris & Associates, Inc.*, 988 F.3d 1334, 1338 (Fed. Cir. 2021).  Plaintiff has not addressed any of these factors, but instead makes the conclusory statement that Defendants are willful infringers without more.

The Court should order Plaintiff to supplement its response to Interrogatory No. 11 immediately.   To the extent that Plaintiff now refuses to supplement its response, Plaintiff should be precluded from arguing that Defendants' are not entitled to equitable intervening rights.

## C.   Plaintiff's Position

Wonderland is not refusing to explain its position on Defendants' defense of equitable intervening rights.  In fact, Wonderland plans to supplement its response to Interrogatory No. 11 as soon as practically possible.  But the facts relevant to Defendants' equitable intervening rights defense are primarily—if not solely—in the possession of Defendants.

Wonderland has diligently sought discovery of relevant facts from Defendants. Defendants, however, have improperly refused to provide basic discovery needed for Wonderland to provide a complete response to Interrogatory No. 11.  Thus, contemporaneously with the filing of this Joint Stipulation, Wonderland requests an informal discovery conference to address Defendants' refusal to provide discovery necessary for Wonderland to provide a complete explanation of its position on Defendants' equitable intervening rights defense.

### 1.   Absolute v. Equitable Intervening Rights

The effect of the reissue of a patent and the defense of intervening rights are set forth in § 252, which states:

> The surrender of the original patent shall take effect upon
> the issue of the reissued patent, and every reissued patent
> shall have the same effect and operation in law, on the trial
> of actions for causes thereafter arising, as if the same had
> been originally granted in such amended form, but in so far
> as the claims of the original and reissued patents are
> substantially identical, such surrender shall not affect any
> action then pending nor abate any cause of action then
> existing, and the reissued patent, to the extent that its
> claims are substantially identical with the original patent,

1     shall constitute a continuation thereof and have effect

2     continuously from the date of the original patent.

3     A reissued patent shall not abridge or affect the right of any

4     person or that person's successors in business who, prior to

5     the grant of a reissue, made, purchased, offered to sell, or

6     used within the United States, or imported into the United

7     States, anything patented by the reissued patent, to

8     continue the use of, to offer to sell, or to sell to others to be

9     used, offered for sale, or sold, the specific thing so made,

10    purchased, offered for sale, used, or imported unless the

11    making, using, offering for sale, or selling of such thing

12    infringes a valid claim of the reissued patent which was in

13    the original patent.  The court before which such matter is

14    in question may provide for the continued manufacture,

15    use, offer for sale, or sale of the thing made, purchased,

16    offered for sale, used, or imported as specified, or for the

17    manufacture, use, offer for sale, or sale in the United States

18    of which substantial preparation was made before the grant

19    of the reissue, and the court may also provide for the

20    continued practice of any process patented by the reissue

21    that is practiced, or for the practice of which substantial

22    preparation was made, before the grant of the reissue, to

23    the extent and under such terms as the court deems

24    equitable for the protection of investments made or

25    business commenced before the grant of the reissue.

26    35 U.S.C. § 252.

27

28

61

The Patent Act provides for two types of intervening rights with respect to reissued patents: (1) intervening rights that abrogate liability for infringing claims added to or modified from the original patent if the accused products were made or used before the reissue, often referred to as "absolute intervening rights"; and (2) intervening rights that apply as a matter of judicial discretion to mitigate liability for infringing such claims even as to products made or used after the reissue if the accused infringer made substantial preparations for the infringing activities prior to reissue, often referred to as "equitable intervening rights." 69 *C.J.S. Patents* § 327.

## 2.     Facts Relevant to Equitable Intervening Rights

In *John Bean Techs. Corp. v. Morris & Assocs., Inc.*, the Federal Circuit identified six factors that courts can use in determining whether to apply an equitable remedy such as equitable intervening rights:  "(1) whether substantial preparation was made by the infringer before the reissue; (2) whether the infringer continued manufacturing before reissue on advice of its patent counsel; (3) whether there were existing orders or contracts; (4) whether non-infringing goods can be manufactured from the inventory used to manufacture the infringing product and the cost of conversion; (5) whether there is a long period of sales and operations before the patent reissued from which no damages can be assessed; and (6) whether the infringer made profits sufficient to recoup its investment."  988 F.3d 1334, 1338 (Fed. Cir. 2021).  Further, "[i]n cases involving equitable remedies and equitable defenses, the discretion of the court permits 'decisions that are flexible, intuitive, and tailored to the particular case.'"  *Id.* at 1339-40 (citations omitted).

## 3.     Defendants Recently Disclosed Facts Highly Relevant to Wonderland's Claim for Willful Infringement.

As an equitable remedy, Defendants' willful infringement of the patent-in-suit is relevant to Defendants' defense of equitable intervening rights.  Defendants complain that Wonderland's interrogatory response citing Defendants' willful

1  infringement is conclusory.  But evidence of willful infringement depends solely on
2  discovery from Defendants.

3      For example, Defendants now concede that some accused products that were
4  sold during the damages period in this case contained a copycat fabric connection.[84]
5  Defendants' copying of the patented design is highly relevant to Wonderland's claim
6  for willful infringement.

7      Wonderland have expended significant efforts to obtain discovery related to
8  the design and development of the accused products from Baby Trend.  Indeed,
9  Wonderland previously served Defendants with a Joint Stipulation in Support of a
10 Motion to Compel Design Documents.[85]  But on April 6, 2021, Defendants sent an
11 email stating "we are producing design related documents and Baby Trend is
12 continuing to search for those types of documents."[86]  Based on this representation,
13 Wonderland tabled its motion to compel.

14     More recently, Baby Tend claims that documents reflecting the initial design
15 and subsequent design changes of accused products are privileged.[87]  While the
16 reasons for the design changes may be privileged, the design changes themselves and
17 when those design changes were implemented are not privileged information.
18 Accordingly, Wonderland requests an informal discovery conference to address
19 Baby Trend's claims of privilege and refusal to produce design documents.

20         **4.     Defendants' Improper Refusal to Provide Discovery
21                 Relevant to Its Equitable Intervening Rights Defense**

22     Notably, much of Defendants' complaint regarding Wonderland's response to
23 interrogatories related to its equitable intervening rights defense stems from
24 Defendants' own deficient discovery responses.  For example, Defendants' complete

---

26 [84] *Id.*; *see also* Song Decl., Ex. Q..
   [85] *See* Song Decl., Ex. R.
27 [86] Song Decl., Ex. S [April 6, 2021 Email from Carter to Song].
   [87] Song Decl., Ex. T at 3.

explanation of its equitable intervening rights defense is the following one-sentence response to Wonderland's Interrogatory No. 9:

> Defendants also contend that Wonderland is barred from recovering damages under the doctrine of equitable intervening rights for the continued manufacture, use, or sale of the accused products that are identical to products Defendants made, purchased, or used or made substantial preparations to make, use, or sell before the grant of the reissue patent.[88]

Wonderland can hardly be expected to provide a detailed response to such cursory allegations. In fact, each of the factors relevant to equitable intervening rights set forth in the Federal Circuit's opinion in *John Bean*, is based on facts solely in the possession of Baby Trend:

**FACTOR 1: substantial preparation**: In *John Bean*, the district court found that Morris (the defendant) made "years of research, developments, investments, improvement, promotion, and goodwill associated with the accused product" and Morris converted "nearly [two-thirds] of its business to selling the accused product." 988 F.3d at 1338. Baby Trend has refused to provide discovery on when it first started selling products that copied Wonderland's patented design and claims that its efforts in designing and developing the accused products are privileged.

**FACTOR 2: advice of counsel:** The deadline for Baby Trend to offer and rely upon an opinion of counsel to rebut willfulness has passed.[89] Thus, this factor does not support Baby Trend's equitable intervening rights defense.

**FACTOR 3: existing orders or contracts:** Baby Trend has not produced any existing order or contracts for accused products.

---

[88] Song Decl., Ex. U.
[89] *See* Stipulation regarding Opinion of Counsel (ECF No. 178).

**FACTOR 4: non-infringing goods can be manufactured from inventory:**
Baby Trend has not produced any documents related to the cost of manufacture or
the cost of implementing non-infringing alternatives.[90]

**FACTOR 5: long period of sales from which no damages can be assessed:**
Baby Trend refuses to provide complete sales data of exposed tube playards prior to
January 15, 2013 and claims that it no longer has sales data from prior to 2011.  On
information and belief, Baby Trend first started copying Wonderland's patented
design in 2007, which would constitute a long period of sales from which no damages
can be assessed.

**FACTOR 6: infringer made profits to recoup investment:**  Baby Trend
refuses to provide sales or cost data of exposed tube playards prior to January 15,
2013.  Thus, Wonderland cannot determine whether Baby Trend made profits to
recoup its investments prior to January 15, 2013.

In sum, the evidence needed for Wonderland to fully explain its position on
Defendants' equitable intervening rights defense is in the possession of Baby Trend.
Accordingly, Wonderland requests an informal discovery conference to address
Baby Trend's failure to provide such relevant discovery.  Until Defendants provide
such discovery, Defendants' motion to compel against Wonderland should be denied.

## IX.   CONCLUSION

### A.   Defendants' Position

For the foregoing reasons, Defendants respectfully requests that the Court
order Plaintiff to: (1) promptly and fully respond to Interrogatory Nos. 3, 15 and 16
in the form of supplemental responses to explain how to interpret Plaintiff's Financial
Spreadsheets; (2) promptly and fully respond to Interrogatory No. 17 and produce all
documents responsive to Defendants' Requests for Production Nos. 74-77 and 111-
113; (3) promptly and fully respond to Interrogatory 15 in the form of a supplemental

---

[90] Song Decl., Ex. U.

1  response; (4) promptly and fully respond to Interrogatory No. 9 in the form of a

2  supplemental response; and (5) promptly and fully respond to Interrogatory No. 11

3  in the form of a supplemental response.

4      **B.    Plaintiff's Position**

5          For the foregoing reasons, Defendants' motion to compel should be denied in

6  its entirety.   If anything, the Court should order Baby Trend to produce and/or

7  identify by Bates number: (1) complete financial data related to its exposed tube

8  playards, including pre-2013 sales and cost data, (2) non-privileged documents

9  related to the design and development of the accused products, (3) documents

10 containing market share information, including confidential documents Baby Trend

11 has obtained from third parties, and (4) fully explain the basis for its intervening

12 rights defense, including identifying the models and number of units it claims are

13 subject to absolute and equitable intervening rights.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

Dated: July 27, 2021

**FAEGRE DRINKER BIDDLE & REATH LLP**

2

3

By: /s/ Kendall C. Griffin

R. TREVOR CARTER
ANDREW M. MCCOY
REID E. DODGE
KENDALL C. GRIFFIN
MICHAEL JAEGER

4

5

6

Attorneys for Defendants Baby Trend, Inc., Denny Tsai, and Betty Tsai

7

8

Dated: July 27, 2021

**MUNCK WILSON MANDALA LLP**

9

10

By: /s/ Michael J. Song

Michael J. Song

11

Attorneys for Plaintiff Wonderland Nurserygoods Co., Ltd.

12

13

14

**ATTESTATION**

15

16

I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the content of this filing and have authorized the filing.

17

18

Dated: July 27, 2021

/s/ Kendall C. Griffin

Kendall C. Griffin

19

20

21

22

23

24

25

26

27

28

67