Valerie M. Goo (State Bar No. 187334)
vgoo@crowell.com
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Tel: (213) 622-4750
Fax: (213) 622-2690

Mark M. Supko (*pro hac vice*)
msupko@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-2734
Fax: (202) 628-5116

*Attorneys for Plaintiff*
*Wonderland Nurserygoods Co., Ltd.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WONDERLAND NURSERYGOODS CO., LTD<br><br>Plaintiff,<br><br>v.<br><br>BABY TREND, INC., DENNY TSAI, and BETTY TSAI<br><br>Defendants. | Case No. 5:14-cv-01153-JWH-(SPx)<br><br>**JOINT STIPULATION REGARDING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER REGARDING DEPOSITION OF KENNY CHENG**<br><br>**DISCOVERY MATTER**<br><br>Judge: Hon. Sheri Pym<br>Date: January 4, 2022<br>Time: 10:00 AM<br>Courtroom: 3<br><br>Close of Fact Discovery: 2/08/2022<br>Close of Expert Discovery: 4/12/2022<br>Final Pretrial Conference: 6/24/2022<br>Jury Trial: 9/26/2022 |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................1

    A. Plaintiff's Position ........................................................................................1

    B. Defendants' Position ....................................................................................1

II. ARGUMENT ..........................................................................................................2

    A. Plaintiff's Position ........................................................................................2

        1. Legal Standard ...................................................................................3

        2. Mr. Cheng does not have unique, first-hand, non-repetitive knowledge of the facts at issue in this case .........................................4

        3. Defendants have not exhausted less-intrusive discovery methods. ............................................................................................6

    B. Defendants' Position ....................................................................................6

        1. Legal Standard ...................................................................................6

        2. Mr. Cheng has unique, first-hand, non-repetitive knowledge of the facts at issue in this case ..............................................................7

        3. Defendants have exhausted less-intrusive discovery methods. ..........13

## I. INTRODUCTION

### A. PLAINTIFF'S POSITION

Plaintiff Wonderland Nurserygoods Co., Ltd. ("Wonderland") respectfully moves this Court for a protective order prohibiting Defendants Baby Trend, Inc., Denny Tsai and Betty Tsai (collectively, "Baby Trend") from taking the deposition of Kenny Cheng ("Mr. Cheng") under the apex doctrine.[1] Mr. Cheng founded The Wonderland Group of Companies in 1983 and has served as the CEO and President for the Group since that time. He sits at the very top of the pyramid of companies that Wonderland lies within. Mr. Cheng is not a named inventor of the patent-in-suit, was not involved in the development of the patented invention, and does not have any unique, first-hand knowledge of the issues in this case. Moreover, Wonderland designated two Federal Rule of Civil Procedure ("Rule") 30(b)(6) witnesses who will testify to all of the relevant topics on which Baby Trend purportedly seeks to depose Mr. Cheng. As the highest-ranking individual at The Wonderland Group of Companies, Mr. Cheng is an apex employee and good cause exists to prohibit his deposition because (1) he does not have any unique first-hand, non-repetitive knowledge of the facts at issue, and (2) Baby Trend has not exhausted other less-intrusive discovery methods.

Counsel for Wonderland and Baby Trend met and conferred regarding Mr. Cheng's deposition by phone on November 22, 2021 and were not able to resolve this dispute. Supko Decl. ¶ 3. Accordingly, Wonderland now moves this Court for a protective order prohibiting Baby Trend's deposition of apex employee Mr. Cheng.

### B. DEFENDANTS' POSITION

Defendants Baby Trend, Inc. ("Baby Trend"), Denny Tsai, and Betty Tsai

---

[1] Baby Trend served a Notice of Deposition of Kenny Cheng on November 12, 2021. Declaration of Mark M. Supko ("Supko Decl.") ¶ 2, Ex. A. Baby Trend noticed the deposition for December 10, 2021. *Id.* In light of the instant discovery dispute, Baby Trend agreed to postpone the deposition pending the Court's decision on this motion.

- 1 -

(together, the "Tsais") (collectively, "Defendants") respectfully request that this Court deny Wonderland's motion for a protective order prohibiting Defendants from taking the deposition of Mr. Kenny Cheng under the apex doctrine because Wonderland has not met its burden of showing that it is entitled to this extraordinary remedy. Indeed, as described in more detail below, there can be no reasonable dispute that Mr. Cheng has first-hand knowledge of facts relevant to this case and, thus, should be subject to deposition. *Finisar Corp. v. Nistica, Inc.*, Case No. 13-cv-03345-BLF (JSC), 2015 WL 3988132, at *2 (N.D. Cal. June 30, 2015) (citation omitted) ("[W]here a corporate officer may have any first-hand knowledge of relevant facts, the deposition should be allowed."). Indeed, Wonderland has produced in this matter at least 528 email chains that include Mr. Cheng in response to Defendants' discovery requests, despite Mr. Cheng not being identified as a possible e-mail custodian. These e-mails confirm that Mr. Cheng is directly and intimately involved in the details and day-to-day decision-making regarding Wonderland's playard business, including, for example, the design and development of playards and the technology related to the patent-in-suit, and the promotion and commercialization of such playards for the purpose of attempting to inflate the value and importance of the patent-in-suit. Moreover, Wonderland's own decision to individually name as defendants and seek to depose the former owners and corporate officers at Baby Trend (*i.e.*, the Tsais)—which Defendants believe Wonderland did at Mr. Cheng's express direction—belies this entire motion. To the extent possible, Defendants have attempted to obtain this discovery through other means but have been unable to do so.

## II.    ARGUMENT

### A.    PLAINTIFF'S POSITION

The Court should prohibit Baby Trend from deposing Mr. Cheng under the apex doctrine because Mr. Cheng is the single highest-ranking individual of the group of companies that Wonderland lies within, he lacks unique personal knowledge of the facts at issue—which Wonderland's Rule 30(b)(6) designees will testify to—and Baby Trend

- 2 -

failed to exhaust less-intrusive discovery methods before seeking to depose Mr. Cheng.

### 1. Legal Standard

"When a party seeks to take the deposition of an official at the highest level or 'apex' of a corporation a stricter standard applies to the party seeking discovery, and the court may exercise its authority under the federal rules to limit discovery." *Simmons v. Morgan Stanley Smith Barney*, LLC, No. 11CV2889-WQH MDD, 2012 WL 6725844, at *2 (S.D. Cal. Dec. 27, 2012); *see also* Fed. R. Civ. P. 26(b)(1). "Courts consistently define apex employees as 'high-level corporate executives.'" *Simmons*, 2012 WL 6725844, at *2. "[T]he closer that a proposed witness is to the apex of some particular peak in the corporate mountain range, and the less directly relevant that person is to the evidence proffered in support of his deposition, the more appropriate the protections of the apex doctrine become." *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. 2012).

"Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment." *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. 05-cv-4374-MMC (JL), 2007 WL 205067, at * 3 (N.D. Cal. Jan. 25, 2007). A deposition of such an official is especially improper "where the information sought in the deposition can be obtained through less intrusive discovery methods (such as interrogatories) or from depositions of lower-level employees with more direct knowledge of the facts at issue." *Id.*; *see also Conforto v. Mabus*, No. 12CV1316-W (BLM), 2014 WL 12560881, at *6 (S.D. Cal. Sept. 24, 2014) ("Courts also generally do not permit depositions of high ranking officials to occur before the depositions of lower ranking employees with more direct knowledge of the case have been taken.").

In deciding whether to allow an apex deposition, courts often consider: "(1) whether or not the high-level deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has

- 3 -

exhausted other less intrusive discovery methods, such as interrogatories and depositions of lower level employees." *Simmons*, 2012 WL 6725844, at *2. "When a high-level corporate executive lacks unique or superior knowledge of the facts in dispute, courts have found that good cause exists to prohibit the deposition." *DR Sys., Inc. v. Eastman Kodak* Co., 08-cv-6669-H, 2009 WL 2973008, at *2 (S.D. Cal. Sept. 14, 2009).

### 2. Mr. Cheng does not have unique, first-hand, non-repetitive knowledge of the facts at issue in this case.

Mr. Cheng does not have any unique, first-hand, non-repetitive knowledge of the facts at issue. First and foremost, Mr. Cheng is not a named inventor on the patent-in-suit and he was not involved in its development. Declaration of Renee Wang ("Wang Decl.") ¶ 7. Second, except for one topic, the information Baby Trend seeks from Mr. Cheng overlaps with and can be obtained from Wonderland's designated Rule 30(b)(6) witnesses.

After Wonderland objected to the deposition of Mr. Cheng, Baby Trend provided the below list of topics to support their contention that the deposition is appropriate. Supko Decl. ¶ 4, Ex. B. As demonstrated below, Wonderland designated Rule 30(b)(6) witnesses to testify to each topic except for one that Wonderland believes is not relevant to any issue in the case:

| Baby Trend's Topic to Kenny Cheng[2] | Baby Trend's Rule 30(b)(6) Topic | Wonderland's Designated Rule 30(b)(6) Witness |
|---|---|---|
| Mr. Cheng's relationship with the Tsais | N/A | N/A |
| Mr. Cheng's knowledge regarding competitive intelligence | 21, 29 | Brad Bickley |
| Mr. Cheng's knowledge of, and involvement in, pricing of Wonderland's playard products | 24 | Brad Bickley |

---

[2] To the extent Baby Trend now argues that it seeks to depose Mr. Cheng on additional topics, Baby Trend failed to identify them during meet and confer efforts.

- 4 -

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER REGARDING DEPOSITION OF KENNY CHENG; Case No. 5:14-cv-01153-JWH (SPx)

| | | |
|---|---|---|
| Mr. Cheng's knowledge of, and involvement in, promoting Wonderland's playard products | 21 | Brad Bickley |
| Mr. Cheng's knowledge of, and involvement in, Wonderland's market share in the playard market | 21, 32 | Brad Bickley |
| Mr. Cheng's knowledge of, and involvement in, Wonderland's playard business strategies | 21, 32, 36 | Brad Bickley, Renee Wang |
| Mr. Cheng's knowledge of, and involvement in, establishing Iron Mountain and Wonderland's relationship with Iron Mountain | 56 | Renee Wang |
| Mr. Cheng's knowledge of, and involvement in, his email communications that Wonderland produced in this matter and the topics addressed therein | 40 | Renee Wang |

Renee Wang has been the Executive Vice President of Engineering at Wonderland since 2013 and has personal knowledge of the issues at hand. Wang Decl. ¶¶ 4–5. Brad Bickley is currently the Vice President of Customer Service at Wonderland and has held various customer service roles at Wonderland since 2003. *Id.* at ¶ 6. Mr. Cheng does not have any material personal knowledge of the above topics that is non-repetitive of the information Mr. Bickley and Ms. Wang have.

The only topic for which a Rule 30(b)(6) witness has not been designated is *Mr. Cheng's relationship with the Tsais*, the principals of Baby Trend. However, this topic does not appear to be relevant to any issue in the case. Supko Decl. ¶ 5. Regardless, Wonderland thus far has not located any documents produced in discovery by either side involving Mr. Cheng and the Tsais. *Id.*

Accordingly, Wonderland believes that Mr. Cheng does not have any unique

- 5 -

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER REGARDING DEPOSITION OF KENNY CHENG; Case No. 5:14-cv-01153-JWH (SPx)

personal knowledge of facts that are *at issue* in this case.

### 3. Defendants have not exhausted less-intrusive discovery methods.

As set forth above, Wonderland designated Rule 30(b)(6) witnesses whose knowledge covers all of the topics potentially at issue as described above. Ms. Wang's deposition is scheduled for December 6–9, 2021, and Mr. Bickley's deposition is scheduled for December 9–10, 2021. Wang Decl. ¶¶ 5–6. Baby Trend has not exhausted the less-intrusive discovery method of deposing lower-level employees—Rule 30(b)(6) witnesses who have been designated specfically to testify to the information Baby Trend claims to seek from Mr. Cheng—prior to seeking to depose the single highest-ranking individual of not only Wonderland, but of the pyramid of companies that Wonderland lies within. Baby Trend's notice of deposition of Mr. Cheng is inappropriate and this Court should prohibit the deposition in its entirety. *See, e.g.*, *Novoa v. Geo Group, Inc.*, No. 5:17-cv-02514, 2020 WL 2501382, at *2 (C.D. Cal. Jan. 2, 2020) (granting motion for protective order barring deposition of defendant's CEO).

## B. DEFENDANTS' POSITION

Wonderland has not met—and cannot meet—its burden of showing an entitlement to the extraordinary remedy of precluding the requested deposition of Mr. Cheng.

### 1. Legal Standard

"Absent extraordinary circumstances, it is very unusual for a court to prohibit the taking of a deposition." *Groupion, LLC v. Groupon, Inc.*, No. 11–0870 MEJ, 2012 WL 359699, at *2 (N.D. Cal. Feb. 2, 2012) (citation omitted). As a result, a "party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied." *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (citations omitted); *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (citation omitted) ("[A] strong showing is required before a party will be denied entirely the right to take a deposition."); *Khan v. Boohoo.com USA, Inc.*, Case No. CV 20-GW (JEMx), 2021 WL 3882969, at *2 (C.D. Cal. July 28, 2021) (same); *Ahlman v. Barnes*,

- 6 -

Case No. 8:20-cv-00835-JGB-SHK, 2021 WL 1570838, at *4 (C.D. Cal. Mar. 9, 2021) (same).

"In determining whether to allow an apex deposition, courts consider (a) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive methods." *Khan*, 2021 WL 3882969, at *2 (citation omitted). With respect to the first consideration, the party seeking to take the deposition need not prove conclusively that the deponent certainly has unique non-repetitive information; rather, "where a corporate officer may have any first-hand knowledge of relevant facts, the deposition should be allowed." *Finisar*, 2015 WL 3988132, at *2 (citation omitted); *accord Ahlman*, 2021 WL 1570838, at *4 (same). With respect to the second consideration, "[f]ormal 'exhaustion' . . . is not 'an absolute requirement; instead, exhaustion of other discovery methods is an important, but not dispositive, consideration for a court to take into account in deciding how to exercise its discretion.'" *Finisar*, 2015 WL 3988132, at *2 (citation omitted); *accord Ahlman*, 2021 WL 1570838, at *4 (same).

### 2. Mr. Cheng has unique, first-hand, non-repetitive knowledge of the facts at issue in this case.

**First**, Mr. Cheng has unique first-hand, non-repetitive knowledge of, and involvement with, his email communications that Wonderland produced in this matter and the topics addressed therein. In response to Baby Trend's e-mail discovery requests, Wonderland has produced at least 528 email chains that include Mr. Cheng in response to Defendants' discovery requests. (Declaration of Reid E. Dodge ("Dodge Decl."), ¶ 3.) Notably, this is true despite Mr. Cheng not being identified as a possible e-mail custodian. (Dodge Decl., ¶ 4, Ex. A.) Only Mr. Cheng can testify to his own personal knowledge of and involvement in these communications, such as what he meant by certain statements made in these documents. *See, e.g., Khan*, 2021 WL 3882969, at *3 ("As to what [a corporate officer] meant by his own statements, there is nothing to

- 7 -

exhaust."); *Hunt v. Continental Casualty Co.*, 2015 WL 1518067, at *3 (N.D. Cal. Apr. 3, 2015) ("Mr. Motamed's testimony regarding his own statements and decisions will thus be non-duplicative.").

Wonderland's assertion that Ms. Renee Wang will testify to this topic during her 30(b)(6) deposition is inaccurate and implausible. As an initial matter, Wonderland inaccurately suggests that this topic is covered by Topic 40 of Defendants' 30(b)(6) Notice. In reality, Topic 40 of Defendants' 30(b)(6) Notice relates to "document retention and destruction policies." (Dodge Decl., ¶ 5, Ex. B at p. 18.) Thus, Ms. Wang's testimony related to Topic 40 is irrelevant to this proposed topic of Mr. Cheng's deposition. Moreover, and as noted above, it is unclear how Ms. Wang could possibly testify to Mr. Cheng's personal knowledge of and involvement in these communications, such as what he meant by certain statements made in these emails. Indeed, Ms. Wang was not included on many of the 528 email chains that include Mr. Cheng (Dodge Decl., ¶ 3) and when asked about Mr. Cheng's statements Ms. Wang admitted that she "cannot speak for Kenny personally[.]" (*See, e.g.,* Dodge Decl., ¶ 13, Ex. L, 68:13-21.)

**Second**, contrary to Wonderland's assertion above, Mr. Cheng has unique first-hand, non-repetitive knowledge of, and involvement in, the development of technology related to the patent-in-suit and Wonderland itself has confirmed this. In Interrogatory No. 3, Defendants requested that Wonderland:

> **Interrogatory No. 3**: Identify and describe in complete detail All use(s), sale(s), offer(s) for sale, knowledge, description(s), invention(s), event(s), occurrence(s), circumstance(s), and Any other activities concerning the subject matter of the '919 Patent or Any product or service embodying or practicing Any claim of the '919 Patent, which took place or occurred prior to or after the filing date of the U.S. patent application that issued as the '919 Patent, whether or not Any such activities took place within the United States, including, but not limited to, the dates of Any such activities, the type of Any such activities (e.g., use(s), sale(s), offer(s) for sale, knowledge, description(s), invention(s), etc.), Any product(s) and/or service(s) involved in Any such activities, and the names of All Persons involved in Any such

- 8 -

activities; and produce All Documents, Things, and ESI concerning the subject matter of this interrogatory and/or Your response hereto.

(Dodge Decl., ¶ 6, Ex. C at p. 7.) In its verified response, Wonderland identified a host of products and identified "Kenny CHENG" as a person involved in the "design" and "development" of many of these products. (*Id.*, Ex. C at p. 13.) Testimony from Wonderland personnel likewise confirms Mr. Cheng's direct involvement in the design and development of Wonderland's playards. (*Id.*, ¶ 7, Ex. D at 37:23-38:7.) Wonderland's representation in this motion that Mr. Cheng "was not involved in [the] development" of technology related to the patent-in-suit or playards, more generally, is simply false,[3] and Mr. Cheng's first-hand knowledge of these unquestionably relevant facts undermine Wonderland's arguments and confirm that his deposition should proceed. *See Ahlman*, 2021 WL 1570838, at *4 ("[W]here a corporate officer may have any first-hand knowledge of relevant facts, the deposition should be allowed."); *In re Apple Iphone Antitrust Litigation*, Case No. 11-cv-06714-YGR (TSH), 2021 WL 485709, at *5 (N.D. Cal. Jan. 26, 2021) (denying an apex objection where the objecting party "listed [the witness] in its initial disclosures as an individual likely to have discoverable information").

**Third**, among email chains that Wonderland produced in this matter and that relate to Mr. Cheng, Defendants have identified emails that confirm that Mr. Cheng has first-hand knowledge of the remaining topics identified in Wonderland's chart above and his intimate involvement in and direction of business decisions related to playard products, including the playard products that purportedly practice the patent-in-suit. For example, in one 2018 e-mail chain, Wonderland personnel refer to "Kenny's direction to use exposed tubes as much as we can" and "Kenny's direction in promoting exposed tubing"

---

[3] In deposition, Ms. Wang admitted that Mr. Cheng was at least "indirectly involved" in the design, development, commercialization, and pricing of Wonderland's playard products. (Dodge Decl., ¶ 13, Ex. L, 159:8-160:19.) At best for Wonderland, Ms. Wang's declaration

- 9 -

in playard products, despite the increased cost of doing so. (Dodge Decl., ¶ 8, Ex. E.) In another 2013 e-mail chain, Wonderland personnel state that "Kenny wants [exposed tube playard] IP in the market" because it is "really important in [the] fight against the competition[.]" (Dodge Decl., ¶ 9, Ex. F.) Such emails provide additional justification to deny Wonderland's motion. *See, e.g., Apple*, 2021 WL 485709, at *4 ("When a lawsuit concerns important aspects of a company's business model that are plainly the result of high-level executive decisions, we should expect that high-level executives will be deposed, and their testimony will be relevant and proportional, and the depositions will not be abusive or harassing."); *accord Ahlman*, 2021 WL 1570838, at *4 ("[W]here a corporate officer may have any first-hand knowledge of relevant facts, the deposition should be allowed."). Defendants believe they have provided the Court with ample evidence and argument, as set forth above, to show why Wonderland has not met its burden of showing an entitlement to the extraordinary remedy of precluding the requested deposition of Mr. Cheng. However, to the extent the Court would like additional evidence, Defendants are willing to provide these additional documents to the Court for in-camera inspection.[4]

**Fourth**, Wonderland's decision to individually name as defendants and seek to depose Mr. Denny Tsai and Ms. Betty Tsai (together, the "Tsais") belies this entire motion. The Tsais are the former owners and executives of Baby Trend. In 2016, the Tsais sold their ownership interest in Baby Trend and subsequently retired. By itself, individually naming corporate officers of a defendant company in a patent case is highly unusual. It is even more unusual in this matter, as the Tsais are retired and no longer have any ownership interest in Baby Trend. For Wonderland to request that the Court

---

creates "factual inconsistencies" in testimony from Wonderland witnesses, which further justifies denying this motion. *See, e.g., Ahlman*, 2021 1570838, at *7.

[4] Defendants do not want to disclose these documents in this filing so as to preview Defendants' deposition exhibits and give Wonderland an unfair advantage in preparing for Mr. Cheng's deposition ahead of time.

- 10 -

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER REGARDING
DEPOSITION OF KENNY CHENG; Case No. 5:14-cv-01153-JWH (SPx)

intervene to prevent the deposition of Mr. Cheng (merely because he is a corporate officer) while at the same time individually naming the Tsais (former owners and corporate officers) as defendants and noticing depositions for the Tsais in this matter (Dodge Decl., ¶ 10, Exs. G, H.) is nothing short of gamesmanship and provides additional justification to deny this motion. Relatedly, Defendants also have a good-faith belief that Mr. Cheng was personally motivated to bring this lawsuit against Baby Trend and the Tsais and Baby Trend is entitled to explore that issue in Mr. Cheng's deposition. (*See, e.g.,* Dodge Decl., ¶ 11, Ex. I at 106:3-10.) *See, e.g., Finisar*, 2015 WL 3988132, at *3 ("Nistica is entitled to inquire whether Mr. Gerter has a particular, personal motivation for bringing suit and, if so, what that is.").

**Finally**, Wonderland's assertion (and corresponding chart) that it "designated Rule 30(b)(6) witnesses to testify to each topic" that Defendants may address during Mr. Cheng's deposition (the "Proposed Cheng Topics") is disingenuous.[5] The chart below includes the Proposed Cheng Topics along with the quoted 30(b)(6) topic language (*see generally* Dodge Decl., ¶ 11, Ex. B) purportedly covering the same subject matter, which demonstrates that Wonderland's assertions are largely (if not wholly) false:

| Proposed Cheng Topics | Alleged Redundant Baby Trend Rule 30(b)(6) Topic |
|---|---|
| Mr. Cheng's relationship with the Tsais | N/A |
| Mr. Cheng's knowledge regarding competitive intelligence | **21**: Plaintiff's marketing, advertising, and/or promotion of the Wonderland Products and any products practicing any Related Patent, including, but not limited to, market analyses, competitive analyses, and consumer surveys, feedback and complaints.<br><br>**29**: The factors or features that drive consumer |

---

[5] Wonderland's suggestion that Baby Trend needed to identify every issue that may be explored during Mr. Cheng's deposition is wrong. (*Supra* n.2.) Indeed, Wonderland cites no authority in support of this assertion and Baby Trend has found none.

- 11 -

| | |
|---|---|
| | demand in the market for playard products generally, including any documents supporting Your position on this topic |
| Mr. Cheng's knowledge of, and involvement in, pricing of Wonderland's playard products | **24**: All facts Relating to royalties, sales, revenues, costs, and profits of the Wonderland Products, including sales projections or expectations, market share analysis, sales data, sales volumes, manufacturing costs, and pricing |
| Mr. Cheng's knowledge of, and involvement in, promoting Wonderland's playard products | **21**: Plaintiff's marketing, advertising, and/or promotion of the Wonderland Products and any products practicing any Related Patent, including, but not limited to, market analyses, competitive analyses, and consumer surveys, feedback and complaints. |
| Mr. Cheng's knowledge of, and involvement in, Wonderland's market share in the playard market | **21**: Plaintiff's marketing, advertising, and/or promotion of the Wonderland Products and any products practicing any Related Patent, including, but not limited to, market analyses, competitive analyses, and consumer surveys, feedback and complaints.<br><br>**32**: The market demand, competitors, and competitive products to the Wonderland Products and Covered Leg Products. |
| Mr. Cheng's knowledge of, and involvement in, Wonderland's playard business strategies | **21**: Plaintiff's marketing, advertising, and/or promotion of the Wonderland Products and any products practicing any Related Patent, including, but not limited to, market analyses, competitive analyses, and consumer surveys, feedback and complaints.<br><br>**32**: The market demand, competitors, and competitive products to the Wonderland Products and Covered Leg Products.<br><br>**36**: All facts Relating to research, development, design, design goals, design proposals, function, performance, and alleged advantages of products practicing the Asserted Patent or a Related Patent, |

- 12 -

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER REGARDING DEPOSITION OF KENNY CHENG; CASE NO. 5:14-CV-01153-JWH (SPx)

| | |
|---|---|
| | including the money and other resources spent by Plaintiff on research and development of such products |
| Mr. Cheng's knowledge of, and involvement in, establishing Iron Mountain and Wonderland's relationship with Iron Mountain | **56**: Your relationship, including past and present, with Graco Children's Products Inc. and Iron Mountains, LLC. |
| Mr. Cheng's knowledge of, and involvement in, his email communications that Wonderland produced in this matter and the topics addressed therein | **40**: Plaintiff's document retention or destruction policies in place from 2003 to the present, including those for any subsidiary, related entity, division, department, or business unit to which any of the Inventors of the Asserted Patent belonged, or any subsidiary, related entity, division, department, or business unit with responsibility for the research, development, design, manufacture, marketing, and/or sale of Wonderland Products. |

Indeed, as shown in the chart above, the Proposed Cheng Topics relate to his own personal knowledge of facts relevant to issues in this case, which only he can testify to. *See, e.g., Khan*, 2021 WL 3882969, at *3 ("As to what [a corporate officer] meant by his own statements, there is nothing to exhaust."); *Hunt*, 2015 WL 1518067, at *3 ("Mr. Motamed's testimony regarding his own statements and decisions will thus be non-duplicative.").

### 3. Defendants have exhausted less-intrusive discovery methods.

Wonderland's argument that Defendants have not exhausted other less intrusive discovery methods is unavailing.

**First**, as noted above, "[f]ormal 'exhaustion' . . . is not 'an absolute requirement.'" *Finisar*, 2015 WL 3988132, at *2 (citing *Hunt*, 2015 WL 1518067, at *2); *accord Ahlman*, 2021 WL 1570838, at *4 (same). Instead, it is simply a "consideration for a court to take into account in deciding how to exercise its discretion." *Id*. Indeed, courts in this district are clear that "where a corporate officer may have any first-hand knowledge of relevant facts, the deposition should be allowed." *Ahlman*, 2021 WL 1570838, at *4

- 13 -

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER REGARDING DEPOSITION OF KENNY CHENG; CASE NO. 5:14-CV-01153-JWH (SPx)

(citation omitted). As explained above, Mr. Cheng has first-hand knowledge of relevant facts and, thus, Defendants should be allowed to depose him. *Id.*

**Second**, as noted above, most (if not all) of the proposed topics for Mr. Cheng's deposition relate to his own personal knowledge of facts relevant to issues in this case. Such evidence can only come from Mr. Cheng and, as a result, "there is nothing to exhaust." *Khan*, 2021 WL 3882969, at *3; *accord Hunt*, 2015 WL 1518067, at *3. As one court acknowledged, "[n]o subordinate employee can speak to what [the corporate officer] meant by his statements. His knowledge is unique and non-repetitive." *Khan*, 2021 WL 3882969, at *2.

**Third**, Defendants did attempt to obtain this information throughout discovery and were unsuccessful. For example, as noted above, Defendants asked Wonderland to identify the people involved in the "design" and "development" of products purportedly practicing the patent-in-suit and Wonderland voluntarily identified "Kenny CHENG" in response. (Dodge Decl., ¶ 6, Ex. C at p. 13.) Ms. Julia Ko, a Wonderland witness, confirmed this during deposition. (Dodge Decl., ¶ 12, Ex. J, 75:21-76:12.) When later asked about Mr. Cheng's involvement in the design and development of these products, Ms. Ko stated that she had no knowledge about that. (*Id.*, Ex. K, 88:16-90:11.) Defendants also asked Ms. Ko about "Kenny's direction to use exposed tubes as much as we can" in playard products and Ms. Ko testified that she could not remember if Mr. Cheng gave that direction even though she did not know any other "Kenny" within Wonderland. (*Id.*, Ex. K, 67:23-72:12.) In short, though not required, Defendants have attempted to obtain this discovery through other means and have been unsuccessful.

**Fourth**, Wonderland's reliance on *Novoa v. Geo Group, Inc.* is misplaced. No. 5:17-cv-02514, 2020 WL 2501382, at *2 (C.D. Cal. Jan. 2, 2020). In *Novoa*, the party seeking the apex deposition did not explain how the requested "testimony would be relevant to" the issues in the case nor did they "show they ha[d] even sought this information through other means." *Id.* at *4. Here, by contrast, Defendants have

- 14 -

explained how Mr. Cheng's testimony would be relevant to issues in this case and how this information has been sought through other means (or simply cannot be sought through other means).

*   *   *   *

"In short, this is not a case in which a high-level executive has little or no knowledge of the issues in the case." *Finisar*, 2015 WL 3988132, at *3. To the contrary, and as explained above, Baby Trend "has made a plausible showing that Mr. [Cheng] may have first-hand knowledge of relevant matters as a percipient witness." *Id.* And, to the extent possible, Baby Trend has sought information to these subjects through other means, even though there "is no strict requirement that a party exhaust every type of discovery request before seeking to compel a deposition[.]" *Id.* In view of these facts, Wonderland cannot possibly argue that Baby Trend's deposition request is aimed at harassing Mr. Cheng or is otherwise abusive. *Id.* For these reasons, Wonderland "has not met its burden of showing an entitlement to the extraordinary remedy of precluding the requested deposition." *Id.*

Dated: December 10, 2021

Respectfully submitted,

 */s/ Valerie M. Goo*

CROWELL & MORING LLP

Valerie M. Goo (State Bar No. 187334)
515 South Flower St., 40th Floor
Los Angeles, CA 90071
*vgoo@crowell.com*
Tel: (213) 622-4750
Fax: (213) 622-2690

Of Counsel:
Mark Supko (*pro hac vice*)
msupko@crowell.com

- 15 -

|   |   |
|---|---|
| | 1001 Pennsylvania Avenue, NW |
| | Washington, DC 20004 |
| | Tel: (202) 624-2734 |
| | |
| | *Attorneys for Plaintiff* |
| | *Wonderland Nurserygoods Co., Ltd* |
| | |
| Dated: December 10, 2021 | /s/ Reid E. Doge |
| | |
| | FAEGRE DRINKER BIDDLE & REATH LLP |
| | |
| | Michael Jaeger (State Bar No. 289634) |
| | michael.jaeger@faegredrinker.com |
| | 1800 Century Park East, Suite 1500 |
| | Los Angeles, CA 90067 |
| | Telephone: 310.203.4000 |
| | Facsimile: 310.229.1285 |
| | |
| | R. Trevor Carter (*pro hac vice*) |
| | trevor.carter@faegredrinker.com |
| | Andrew M. McCoy (*pro hac vice*) |
| | andrew.mccoy@faegredrinker.com |
| | Reid E. Dodge (*pro hac vice*) |
| | *reid.dodge@faegredrinker.com* |
| | 300 North Meridian Street, Suite 2500 |
| | Indianapolis, IN 46024-1750 |
| | Telephone: 317.237.0300 |
| | Facsimile: 317.237.1100 |
| | |
| | *Attorneys for Defendants, Baby Trend, Inc. Denny Tsai, and Betty Tsai* |

- 16 -

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER REGARDING DEPOSITION OF KENNY CHENG; CASE NO. 5:14-CV-01153-JWH (SPx)

# SIGNATURE ATTESTATION

Pursuant to C.D. Cal. L.R. 5-4.3.4(a)(2), I hereby attest that all signatories listed above, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: December 10, 2021           */s/ Valerie M. Goo*
                                                          CROWELL & MORING LLP

                                                          Valerie M. Goo (State Bar No. 187334)
                                                          515 South Flower St., 40th Floor
                                                          Los Angeles, CA 90071
                                                          *vgoo@crowell.com*
                                                          Tel: (213) 622-4750
                                                          Fax: (213) 622-2690

- 17 -

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER REGARDING DEPOSITION OF KENNY CHENG; Case No. 5:14-cv-01153-JWH (SPx)