Valerie M. Goo (State Bar No. 187334)
*vgoo@crowell.com*
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Tel: (213) 622-4750
Fax: (213) 622-2690

Mark M. Supko (*pro hac vice*)
*msupko@crowell.com*
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-2734
Fax: (202) 628-5116

*Attorneys for Plaintiff*
*Wonderland Nurserygoods Co., Ltd.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WONDERLAND NURSERYGOODS CO., LTD.,<br><br>          Plaintiff,<br><br>     v.<br><br>BABY TREND, INC., DENNY TSAI, and BETTY TSAI,<br><br>          Defendants. | Case No. 5:14-cv-01153-JWH-(SPx)<br><br>**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PROTECTIVE ORDER REGARDING DEPOSITION OF KENNY CHENG**<br><br>**DISCOVERY MATTER**<br><br>Judge:        Hon. Sheri Pym<br>Date:         January 4, 2022<br>Time:         10:00 AM<br>Courtroom:    3<br><br>Close of Fact Discovery:      2/08/2022<br>Close of Expert Discovery:    4/12/2022<br>Final Pretrial Conference:    6/24/2022<br>Jury Trial:                   9/26/2022 |

# I.    INTRODUCTION

The attempt by Defendants Baby Trend Inc., Denny Tsai and Betty Tsai (collectively, "Baby Trend") to depose Kenny Cheng, Plaintiff Wonderland Nurserygoods Co. Ltd.'s ("Wonderland") CEO and the single highest-ranking individual, President, of Wonderland's family of companies—despite Mr. Cheng's lack of unique, personal knowledge of the facts at issue in this patent infringement case and Baby Trend's failure to exhaust less-intrusive discovery methods—is contrary to Ninth Circuit precedent applying the "apex doctrine." Baby Trend's asserted justification for deposing Mr. Cheng relies, in part, on the fact that Wonderland deposed the former owners and chief corporate officers of Baby Trend (*i.e.*, Denny and Betty Tsai), *see* ECF No. 280-1, Joint Stip. 2:17–20, but the comparison is inapt because Mr. Cheng is not party to this lawsuit and his involvement with the material facts is tangential at best, as Wonderland's Rule 30(b)(6) designee, Renee Wang, recently explained. Case law in the Ninth Circuit is clear that "parties seeking to depose a high-ranking corporate officer *must* first establish that the executive (1) has unique, non-repetitive, firsthand knowledge of the facts at issue in the case, *and* (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *Affinity Labs of Texas v. Apple, Inc*., No. C 09-4436 CW JL, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011) (emphasis added). Baby Trend fails on both counts.

Even assuming that Mr. Cheng has personal knowledge of relevant facts, his purported knowledge is not unique. The emails Baby Trend points to, the vast majority of which list Mr. Cheng merely as having been cc'ed, represent less than 1.3% of Wonderland's production of emails in this matter. Further, Ms. Wang, the Executive VP of Engineering at Wonderland, testified that Mr. Cheng was *not* directly involved in the conception of Wonderland's patented invention, nor even the development of Wonderland's playards that practice the invention, but rather merely provided approvals and encouragement for innovation at a high level. "Where a high-level decision-maker

- 1 -

'removed from the daily subjects of the litigation' has no unique personal knowledge of the facts at issue, a deposition of the official is improper." *Dauth v. Convenience Retailers, LLC*, No. C 13-047 MEJ, 2013 WL 4103443, at *1 (N.D. Cal. Aug. 12, 2013) (citation omitted). To the extent Mr. Cheng has personal knowledge, it is not unique, it is subsumed by Ms. Wang's and that of Wonderland's other Rule 30(b)(6) witnesses. Accordingly, less intrusive discovery methods have been available to Baby Trend.

The Court should grant Wonderland's request for a protective order prohibiting the deposition of Mr. Cheng because the deposition would be repetitive, burdensome and disruptive, and Baby Trend has not demonstrated that an apex employee deposition is warranted. *See Bicek v. C & S Wholesale Grocers, Inc.*, No. 2:13-CV-0411-MCE-KJN, 2013 WL 5425345, at *6 (E.D. Cal. Sept. 27, 2013) (prohibiting two apex depositions for failure to make the required showing).

### A. Baby Trend Cannot Circumvent the Apex Doctrine by Requesting Mr. Cheng's "Personal Knowledge" on Topics for Which Lower-Level Employees Can Testify.

Mr. Cheng does not have unique, personal knowledge relevant to this case. Baby Trend's reliance on the fact that Wonderland has produced "at least 528 email chains that include Mr. Cheng" (Joint Stip 7:20–22) is unavailing. Baby Trend conveniently leaves out that Wonderland has produced over 41,000 emails in this case. Decl. of Mark M. Supko ("Supko Decl.") ¶ 2. The approximately 528 emails Baby Trend touts amount to less than 1.3 % of the emails Wonderland produced. And it is no wonder that Mr. Cheng would have been cc'ed on some amount of Wonderland's emails, since he has served as the CEO and President of The Wonderland Group of Companies since 1983. These facts in no way demonstrate that Mr. Chen has unique, first-hand knowledge *of material facts* sufficient to justify a deposition of an apex employee.

Any knowledge Mr. Cheng has related to the patent infringed by Baby Trend is second-hand—he is not the named inventor—and even then, is encompassed by that of

- 2 -

Wonderland's Rule 30(b)(6) witnesses. Indeed, Ms. Wang testified at length that Mr. Cheng was not directly involved in the design and development of Wonderland's commercial products that practice the invention, to the limited extent *Wonderland's* products are even relevant. Supko Decl. ¶ 3, Ex. A (Wang Dep. 146:12–22 ("He is not personally dealing with the technical drawing sketching or making any sample."); 147:4–18 ("Design and development means that put the technical drawing together. And for development you need some people to help to put a sample together and then you have to perform some testing and you have to perform some compliance understanding and to make sure the product comply with the regulation required by the designated customers or the countries you are going to sell . . . . But Kenny is not doing that kind of a job.")). Instead, Mr. Cheng operated in an oversight role, providing high-level encouragement and approval. *Id.* at 140:12–16 ("He always encouraging us any good innovation, any good product we should promote and present to customers as always"); 147:18–19.

Baby Trend's assertion that Mr. Cheng had "direct involvement in the design and development of Wonderland's playards," relying on Wonderland's prior response to Interrogatory No. 3, is similarly unavailing. To be clear, the overly broad interrogatory encompasses subject matter that is irrelevant to this litigation (*e.g.*, commercial products made and sold only outside the U.S.), and Wonderland's response early in the case erred on the side of over-inclusion when identifying knowledgeable individuals. ECF No. 280-4, Dodge Decl., Ex. C, p. 46.[1] That Mr. Cheng was listed as knowledgeable about the design and development of certain Wonderland products does not mean that he has unique, first-hand knowledge of facts material to this infringement case.

Baby Trend also cites the deposition testimony of Nan-Gui Bu in a different case, where Ms. Nan-Gui testified that Mr. Cheng provided the idea for "assembly of the

---

[1] Wonderland recently served a supplemental response to this interrogatory that corrected the misidentification of Mr. Cheng, among numerous other corrections. Supko Decl. ¶ 4, Ex. B.

playpen so that it can be folded up" but, as Baby Trend is aware, Ms. Wang clarified that Ms. Nan-Gui was referring to a different project, unrelated to the technology protected by the '919 Patent asserted here. Supko Decl. ¶ 3, Ex. A, Wang Dep. 153:5–19; 154:16–18. Ms. Wang also explained that Ms. Nan-Gui cannot speak English, so some nuance may have been lost in translation. *Id.* at 155:9–12.

The case law Baby Trend relies upon is inapposite, involving very different facts. For example, Baby Trend cites *Khan v. Boohoo.com USA, Inc.*, No. CV2003332GWJEMX, 2021 WL 3882969, at *1 (C.D. Cal. July 28, 2021), to support its argument that "[a]s to what [a corporate officer] meant by his own statements, there is nothing to exhaust." ECF No. 280-1, Joint Stip at 7:24–8:3. There, however, the issue was whether defendants engaged in deceptive marketing practices, and the plaintiffs identified several emails in which an apex employee revealed his direct involvement in the exact scheme at issue. *Id.* The court permitted the deposition because, unlike here, the employee's knowledge was unique and non-repetitive. *Id.* at *3; see also Hunt v. Cont'l Cas. Co.*, No. 13-CV-05966-HSG, 2015 WL 1518067, at *2 (N.D. Cal. Apr. 3, 2015) (permitting apex deposition where claims included allegations regarding actions and statements *by* the apex employee). Here, Mr. Cheng's connection to the issues at hand is tangential at best, as Ms. Wang explained.

Baby Trend's chart of topics about which Mr. Cheng supposedly has unique knowledge is unpersuasive. *See* Joint Stip. at 11. Baby Trend is simply attempting to circumvent the apex doctrine by tacking the phrase "Mr. Cheng's knowledge of" onto the Rule 30(b)(6) topics it served earlier in the case. Wonderland provided corporate designees[2] to testify to all of the topics, so there were (and remain) less intrusive ways for Baby Trend to obtain the discovery it claims to need.

Baby Trend also argues in a footnote that it need not identify every issue that it

- 4 -

would like to explore with Mr. Cheng. To the contrary, to justify deposing an apex employee, the requesting party *must* show that the deponent has unique and personal knowledge of facts relevant to the litigation. *See Affinity Labs*, 2011 WL 1753982, at *17 (granting protective order where apex employee did not possess unique or non-repetitive knowledge to justify his deposition). Baby Trend has not done so.

### B. Less Intrusive Methods for Obtaining the Discovery Sought Were (and Are) Available to Baby Trend.

Baby Trend has not exhausted less intrusive methods of discovery because the information it seeks, to the extent it exists, can be (or could have been) obtained from Wonderland's Rule 30(b)(6) witnesses. *See Google v. Am. Blind & Wallpaper Factory, Inc.,* 2006 WL 2578277, at *3 (N.D. Cal. Sep. 6, 2006) (courts generally preclude the immediate deposition of apex executives before the testimony of lower level employees with more intimate knowledge has been secured); *Groupion, LLC v. Groupon, Inc.*, No. 11-0870 MEJ, 2012 WL 359699, at *5 (N.D. Cal. Feb. 2, 2012) (precluding apex deposition where plaintiff failed to establish that deponents had unique first-hand knowledge of facts, and that it exhausted less intrusive methods). That Wonderland's witnesses thus far may not have provided the exact answers Baby Trend seeks is insufficient to permit Baby Trend to depose the highest-ranking official at Wonderland. And, the fact that depositions are largely completed—including several that took place *during* this dispute—does not mean that Baby Trend has exhausted less intrusive methods. Indeed, Baby Trend was motivated to *avoid* exhausting the topics with Wonderland's Rule 30(b)(6) witnesses to support its opposition to this motion, particularly since the issues for Mr. Cheng have marginal relevance to the litigation.

## II.   CONCLUSION

Wonderland respectfully requests that the Court grant its motion.

---

[2] Wonderland withdrew Brad Bickley as the Rule 30(b)(6) witness testifying to certain topics regarding sales of the playard and offered Julia Ko instead.

Dated: December 21, 2021

Respectfully submitted,

 */s/ Valerie M. Goo*

CROWELL & MORING LLP

Valerie M. Goo (State Bar No. 187334)
515 South Flower St., 40th Floor
Los Angeles, CA 90071
*vgoo@crowell.com*
Tel: (213) 622-4750
Fax: (213) 622-2690

Of Counsel:
Mark Supko (*pro hac vice*)
msupko@crowell.com
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-2734
Fax: (202) 628-5116

*Attorneys for Plaintiff*
*Wonderland Nurserygoods Co., Ltd*

- 6 -